Robert **PRESLEY**, on behalf of himself and all other persons similarly situated, Plaintiffs,

v.

Donald T. **REGAN**, as Secretary of the United States Department of the Treasury and Margaret Heckler, as Secretary of the United States Department of Health and Human Services, Defendants.

No. 83–CV–630.

United States District Court, N.D. New York.

March 11, 1985.

Cornell Legal Aid, Karen Hagberg, George Hayes, Keith St. John (Students), Ithaca, N.Y., for plaintiffs; Daniel A. Pozner, Ithaca, N.Y., of counsel.

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y., Louis J. Lombardo, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendants; Joseph A. Pavone, Asst. U.S. Atty., Syracuse, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Plaintiff Robert Presley brings this action on behalf of himself and others similarly situated for declaratory and injunctive relief against the Secretary of the Treasury and the Secretary of Health and Human Services.[1] The action challenges the constitutionality of the federal-state tax intercept program created by section 2331 of the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, 95 Stat. 357, 860 (1981) ["tax intercept program" or "program"].[2] Plaintiffs contend that the tax intercept program is unconstitutional because it allows the government to deprive them of their property, namely their tax refunds, without due process of law. Plaintiffs seek injunctive relief prohibiting the defendants from withholding or interfering with their federal tax refunds and a

1. The class was certified on November 27, 1984. It consists of approximately 1800 New York residents whose federal tax refunds have been intercepted pursuant to the tax intercept program and sent to states *other than* New York.

2. The tax intercept program is codified at 42 U.S.C. § 664 and provides:

§ 664. Collection of past-due support from Federal tax refunds

(a) Upon receiving notice from a State agency administering a plan approved under this part [42 U.S.C. §§ 651 *et seq.*] that a named individual owes past-due support which has been assigned to such State pursuant to section 402(a)(26) [42 U.S.C. § 602(a)(26) ], the Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such individual (regardless of whether such individual filed a tax return as a married or unmarried individual). If the Secretary of the Treasury finds that any such amount is payable, he shall withhold from such refunds an amount equal to the past-due support, and pay any such amount to the State agency (together with notice of the individual's home address) for distribution in accordance with section 457(b)(3) [42 U.S.C. § 657(b)(3) ].

(b) The Secretary of the Treasury shall issue regulations, approved by the Secretary of Health and Human Services, prescribing the time or times at which States must submit notices of past-due support, the manner in which such notices must be submitted, and the necessary information that must be contained in or accompany the notices. The regulations shall specify the minimum amount of past-due support to which the offset procedure established by subsection (a) may be applied, and the fee that a State must pay to reimburse the Secretary of the Treasury for the full cost of applying the offset procedure, and provide that the Secretary of the Treasury will advise the Secretary of Health and Human Services, not less frequently than annually, of the States which have furnished notices of past-due support under subsection (a), the number of cases in each State with respect to which such notices have been furnished, the amount of support sought to be collected under this subsection by each State, and the amount of such collections actually made in the case of each State.

(c) As used in this part [42 U.S.C. §§ 651 et seq.] the term "past-due support" means the amount of a delinquency, determined under a court order, or an order of an administrative process established under State law, for support and maintenance of a child, or of a child and a parent with whom the child is living.

The Internal Revenue Code was simultaneously amended to provide authority for the interception of the delinquent parent's tax refund. Section 6402(c) of Title 26 provides:

§ 6402. Authority to make credits or refunds

* * * * * *

(c) Offset of past-due support against overpayments.

The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support (as defined in section 464(c) of the Social Security Act [42 U.S.C. § 664(c) ] ) owed by that person of which the Secretary has been notified by a State in accordance with section 464 of the Social Security Act [42 U.S.C. § 664]. The Secretary shall remit the amount by which the overpayment is so reduced to the State to which such support has been assigned and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State. This subsection shall be applied to an overpayment prior to its being credited to a person's future liability for an internal revenue tax.

declaratory judgment that the tax intercept program is unconstitutional because it fails to provide plaintiffs with a full and fair hearing prior to interception of their refunds.

Presently before the court are cross motions for summary judgment. For the reasons set forth below, the plaintiffs' motion for summary judgment is denied and the defendants' motion for summary judgment is granted. The defendants have also made a motion to join the State of Michigan as an indispensable party. The motion to join is denied.

## BACKGROUND

In 1976 plaintiff Robert Presley married Shirley Ann Smith in Ithaca, New York. They subsequently had two children. In 1977, Mrs. Presley took the children and moved to Michigan where she commenced divorce proceedings against the plaintiff. In 1979, Mr. Presley received two forms in the mail; the forms were related to the Michigan divorce proceeding and were captioned "Consent to Jurisdiction" and "Appearance." Mr. Presley cannot read or write, but he is able to sign his name. Believing that the forms would allow his wife to obtain a divorce, Mr. Presley signed the forms, apparently unaware that signing would allow the Michigan courts to enter a support judgment against him.

On March 21, 1980, the Michigan court entered a default judgment of divorce against Presley and ordered him to pay $40 per week support for each of his two children. At the time this decree was entered, Presley was unemployed. Mr. Presley never submitted any financial information to the Michigan court, has never been to Michigan, and has never paid any of the

support payments ordered by the Michigan court.

Mrs. Presley applied for welfare benefits in Michigan. As a prerequisite to receiving benefits, she assigned her right to receive child support payments to the State of Michigan.[3] As a result, Mr. Presley now owes his past due child support payments to Michigan rather than to his former wife. The support arrearages have continued to accrue, and the latest delinquency notice indicates that he owes more than $15,000 to the State of Michigan.

In April 1982, Mr. Presley received notification from the Internal Revenue Service ["IRS"] that his 1981 federal income tax refund had been intercepted and sent to the Michigan state welfare agency pursuant to the tax intercept program.[4] The tax intercept program authorizes the seizure of federal tax refunds to reimburse state welfare agencies for monies spent to aid families who have not received support payments from a parent obligated to make such payments. Mr. Presley contends that the tax intercept program is constitutionally invalid and that the actions of the defendants in offsetting any overpayment of federal income taxes against past-due child support payments violate the plaintiffs' right to procedural due process of law under the Fifth Amendment of the U.S. Constitution. Plaintiffs maintain that they are entitled to notice and a meaningful opportunity to be heard prior to being deprived of their federal income tax refund. The government contends that Mr. Presley and the class he represents have received all the process they are due.

## DISCUSSION

Under Fed.R.Civ.P. 56(c), a party is entitled to summary judgment when it has

---

**3.** Title IV, Part A, of the Social Security Act, 42 U.S.C. §§ 601 et seq. establishes the Aid to Families with Dependent Children program [AFDC], a cooperative Federal-State program for the provision of financial aid and services to certain needy dependent children and their families. Pursuant to the AFDC program, applicants and recipients are required to assign to the States their right to receive child support payments as

a condition of receiving AFDC assistance. 42 U.S.C. § 602(a)(26).

**4.** Mr. Presley's 1982 and 1983 tax refunds have also been intercepted and sent to the State of Michigan. The amounts of his tax refunds are as follows:

| | |
|---|---|
| 1981 | $ 165.87 |
| 1982 | $ 169.57 |
| 1983 | $ 346.20 |

demonstrated "the absence of any material factual issue genuinely in dispute" and, that it is entitled to judgment "as a matter of law." *See Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 115 (2d Cir.1984); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). Both parties are essentially in agreement regarding the procedures that were followed in Mr. Presley's case. Before turning to the merits of the plaintiffs' due process claim, a closer examination of the tax intercept program's structure and procedures is warranted.

The tax intercept program was enacted in 1981 as an amendment to the Child Support Enforcement Act, 42 U.S.C. § 651 *et seq.* The legislative history of the statute and amendment indicates that Congress was concerned about the growing problem of parents defaulting on their child support obligations with a consequent drain on limited state welfare resources. *See* S.Rep. No. 93–1356, 93rd Cong., 2nd Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 8133, 8145–50; S.Rep. No. 97–139, 97th Cong., 1st Sess. *reprinted in* 1981 U.S. Code Cong. & Ad. News 396, 787. Under the tax intercept program, any tax refund due to the defaulting parent may be intercepted by the IRS and paid to the state agency that has provided aid to the defaulting parent's family. However, before the tax intercept program can be utilized by the States, certain prerequisites have to be met.

The normal progression of events is as follows. The custodial parent, usually the mother, seeks a divorce from the non-custodial parent. An order of support is entered against the non-custodial parent. The non-custodial parent then defaults on the support payments, often forcing the custodial parent to apply for welfare benefits. The custodial parent then assigns any rights to child support payments to the state as a condition of eligibility for welfare. When the non-custodial parent is more than $500.00 in arrears, the state welfare agency reports his name to the Secretary of Health and Human Services. The Secretary, through the Office of Child Support Enforcement, then ascertains whether a valid support order exists and whether the non-custodial parent is in default. If so, the Secretary of Health and Human Services certifies the delinquent parent's name to the Secretary of the Treasury. The Secretary of the Treasury then directs the IRS to withhold as much of the delinquent parent's federal tax refund as will satisfy the outstanding support payments. The refund is then transferred to the state welfare agency to satisfy the parent's debt. A recent amendment to the statute requires the state to send the delinquent parent notice of the impending intercept before his name is certified to the Secretary of the Treasury.[5] This amendment renders Mr. Presley's arguments regarding notice moot as all delinquent parents are now entitled to notice before their tax refunds are intercepted and transferred.[6] The notice in-

---

**5.** Child Support Enforcement Amendments of 1984, Pub.L.No. 98–378, § 21, 98 Stat 1305, 1323 (1984).

**6.** Additionally, the consent judgment in *Jones v. Ritsema*, No. 82–73574 slip op., (E.D.Mich. Feb. 29, 1984) requires the State of Michigan to send a more detailed notice than that required by the amendment. *Jones* provides:

A pre-offset notice shall be sent by the state or its assignee to all persons in the State of Michigan who may be certified to the Internal Revenue Service as delinquent in child support payments under the federal-state intercept program authorized pursuant to 42 U.S.C. 644 [sic] (West Supp.1982) and 26 U.S.C. 6402 (West Supp.1982). The notice shall be sent before the name has been certi-

fied and shall contain the following information:

a) a statement that the person has a right to a hearing to dispute the certification if he or she believes the amount certified is in error, if he or she is currently on a wage assignment or questions the amount for any other reason;

b) a statement informing the person that he or she may contact the Friend of the Court to request a hearing;

c) a statement informing the recipient of the right of a non-obligated spouse to receive his or her portion of the tax refund from the Internal Revenue Service in the case of a joint return.

*Jones,* slip op., ¶ 1 at 2.

forms the taxpayer of the amount of his refund, the state agency to which it was sent, and the procedure to be followed to contest the state's determination that past-due support is owed or the amount of past-due support owed.[7]

The tax intercept program does not, however, afford delinquent parents an opportunity for a hearing before the tax refund is transferred to the state agency. Mr. Presley argues that the failure to provide delinquent parents with a pre-transfer hearing renders the tax intercept program constitutionally defective.

It is well-settled that any significant deprivation of property by the government must "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). This opportunity to be heard must be made available "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (*quoting Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965) ). Even a "temporary, nonfinal" deprivation of property has been held to be a significant deprivation under the Fourteenth Amendment in certain circumstances. *Fuentes v. Shevin*, 407 U.S. 67, 85, 92 S.Ct. 1983, 1996, 32 L.Ed.2d 556 (1972). A number of courts have held that the interception of one's tax refund is a significant deprivation, "implicating due process concerns." *Coughlin v. Regan*, 584 F.Supp. 697, 707 (D. Maine 1984); *accord, Nelson v. Regan*, 560 F.Supp. 1101, 1106 (D.Conn. 1983), *aff'd on other grounds*, 731 F.2d 105 (2d Cir.), *cert. denied sub nom. Manning v. Nelson*, — U.S. —, 105 S.Ct. 175, 83 L.Ed.2d 110 (1984); *Marcello v. Regan*, 574 F.Supp. 586, 595 (D.R.I.1983); *Sorenson v. Secretary of the Treasury*, 557 F.Supp. 729, 737 (W.D.Wash.1982), *affirmed* 752 F.2d 1433 (9th Cir.1985). Two courts have held that due process requires the states to provide a pre-transfer hearing, *Nelson*, 560 F.Supp. at 1111; *Marcello*, 574 F.Supp. at 599, and two courts have held that no hearing is constitutionally required before transfer of an obligated parent's refund. *Jahn v. Regan*, 584 F.Supp. 399 (E.D.Mich. 1984); *Kenney v. Secretary of the Treasury*, No. 83–2427, slip op. (C.D.Cal. Oct. 11, 1983). This court, however, need not reach the question of whether the Constitution requires a pre-transfer hearing because the State of Michigan has agreed to afford pre-transfer hearings to delinquent spouses. *Jones v. Ritsema*, No. 82–73573, slip op. (E.D.Mich. Feb. 29, 1984).[8] Mr. Presley is clearly entitled to avail himself of the procedures agreed to in *Jones*.[9] Thus, the only question left for this court to resolve is whether Mr. Presley is denied

---

**7.** Child Support Enforcement Amendments of 1984, Pub.L.No. 98–378, § 21, 98 Stat 1305, 1323 (1984).

**8.** *Jones* provides:
All persons who believe that their names should not be certified as delinquent in child support obligations for the purpose of intercepting their tax refunds by the Internal Revenue Service are entitled to a hearing. Kheder, of the Department of Social Services, agrees to instruct all local offices of the Friend of the Court in the State of Michigan to conduct hearings for all individuals who request one.
Any individual requesting a hearing may do so by contacting the Friend of the Court office in the county that the support order was entered. The hearing may be informal before an employee of the Friend of the Court who has the authority to request a deletion of the individual's name from the certification list. The individual must be allowed to appear personally or with an attorney or other individual, present documentary evidence and examine the evidence that forms the basis of the certification....
*Jones*, slip op., ¶ ¶ 3, 4 at 2–3.

**9.** The court is aware that the class certified by this court on November 17, 1984 may contain interstate plaintiffs whose forum state does not afford them an opportunity to be heard. At this point the court does not have any evidence before it relating to such plaintiffs. While the court is of the view that the federal defendants are not the proper parties to provide such plaintiffs with additional due process safeguards, the court also believes that entry of summary judgment against these plaintiffs would be unjust in view of the lack of evidence. Thus, the complaint will be dismissed without prejudice with regard to those plaintiffs whose forum state do not afford them a predeprivation hearing.

due process because he is too poor to travel to Michigan to avail himself of a hearing. Mr. Presley argues that his opportunity to be heard is not "meaningful" because he does not have the funds to travel to Michigan.

As a preliminary matter the court notes that the Supreme Court has declined to treat the poor as a suspect class. *See San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); L. Tribe, American Constitutional Law, 1118–1125 (1978). The Court has also declined to recognize a fundamental right to various necessities of life. *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); L. Tribe, American Constitutional Law, 1127–1136 (1978). Therefore, if Mr. Presley were to prevail here, it would not be because he is too poor to travel to Michigan, but rather because all interstate plaintiffs [10] have a due process right to be heard in their home state.

The Supreme Court established a balancing test for determining the constitutional adequacy of governmental procedures with regard to due process in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The test requires a balancing of three factors:

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

This court agrees with the *Nelson* and *Marcello* courts that the first factor

weighs in favor of the plaintiff. Many families "plan for and rely on the certainty of a refund", and an unexpected deprivation of that refund could create a budgetary crisis in a family. *Marcello,* 574 F.Supp. at 596; *see also, Nelson,* 560 F.Supp. at 1108; *Sorenson,* 557 F.Supp. at 738. The court also finds that, were it not for the safeguards provided by the *Jones* decision, the second factor would weigh in favor of the plaintiff. The risk of an erroneous deprivation in a joint federal-state program involving two, or sometimes three, levels of bureauracy is substantial. However, the procedures set up in *Jones* reduce the likelihood that such erroneous deprivations will be made. Thus, the second factor weighs in favor of the defendants here.

Even if the first two factors both weighed in favor of the plaintiffs, the third factor would tip the scale in favor of the defendants. The plaintiffs bring this action seeking a declaration that the federal government is the proper party to provide interstate plaintiffs with a hearing in their home state.[11] However, this court agrees with the court in *Sorenson* that there "is something uniquely inappropriate in involving the Federal Government" in the hearing process. *Sorenson,* 557 F.Supp. at 738. Although the federal government has an indirect interest in maintaining the fiscal health of the AFDC program, it has little or no interest in the plaintiffs' tax refunds or the intercept program itself. The federal government's role in the tax intercept program is merely to act as the states' bill collector. The IRS acts as a kind of clearinghouse, shuttling the refunds to either the plaintiff or a state agency on behalf of the plaintiff. *See Sorenson,* 557 F.Supp. at 738. Moreover, the financial and adminis-

---

**10.** By "interstate plaintiff" the court means an obligated parent whose tax refund was intercepted and sent to a state other than the state in which he resides.

**11.** Indeed, if the plaintiffs were entitled to a hearing in their home state it would have to be provided by the federal government. Placing

the burden on the individual states would be totally unworkable because each of the remaining 49 states would have to hold hearings in the plaintiffs' home state. Thus, every state would have to hold hearings in every other state, a plan that is clearly not feasible.

trative burdens involved in implementing a procedure for holding predeprivation hearings on a federal level would be prohibitively high.

Plaintiffs contend that the financial and administrative burden on the government would actually be low because the IRS already provides in-office hearings for individuals with questions regarding their tax refunds. The plaintiffs, however, overlook the fact that the IRS employees conducting these in-office hearings are normally individuals with no legal training who would be unable to resolve the kind of challenge to the tax intercept program that Mr. Presley has raised here, namely, that the Michigan court did not have proper jurisdiction over him when it issued the divorce decree. Additionally, even if the challenge to the program were not based on legal arguments, all of the information necessary to resolve a dispute under the tax intercept program is within the control of the forum states. In order to resolve such a dispute, the IRS agent would have to contact the forum state, here Michigan, and have all the information sent to the plaintiffs' home states. This procedure, in the court's opinion, is both unnecessarily costly and inefficient. Additionally, requiring the defendants to implement new costly and burdensome procedures to provide interstate plaintiffs with predeprivation hearings in their home state would fly in the face of Congress' intent to execute the tax intercept program with as little administrative burden on the IRS as possible.[12]

Moreover, denying the plaintiffs the right to be heard by the IRS in their home state does not strip them of all due process guarantees. The plaintiffs are still entitled to a predeprivation hearing in their forum states. Even if a plaintiff decides that he cannot afford a trip to his forum state, he is free to submit his objections and any supporting documents he may have by mail.[13]

■ Accordingly, the court finds the Constitution does not require the defendants to provide the plaintiffs with an opportunity to be heard in their home states before their tax refunds are intercepted. The notice and hearing afforded to Mr. Presley by the State of Michigan provide him with adequate due process safeguards.[14] The court hereby grants the defendants' motion for summary judgment and denies the plaintiffs' motion for summary judgment. As to those members of the plaintiff class whose forum states do not provide them with a pre-transfer hearing, the complaint is dismissed without prejudice.

IT IS SO ORDERED.

---

**12.** S.Rep. No. 97–139, 97th Cong. 1st Sess., *reprinted in* 1981 U.S.Code Cong. & Ad.News, 1st Sess. 396, 808. The summary states:

> The child support enforcement provisions should have minimal regulatory effect. The committee understands and expects that the provision requiring the IRS to withhold tax refunds of persons owing delinquent child support payments will be administered in such a way as to strictly limit the administrative burden of the IRS.
> *Id.*

**13.** At the oral argument on these motions the plaintiffs' counsel indicated that written submis-

sions might be enough to satisfy due process. Plaintiffs' counsel stated:

> All that we are asking for are some minimum guidelines. And the suggestion we have in the first instance, the persons who wish to object to the Secretary's determination that his or her refund will be offset should be afforded an opportunity *to submit in writing objections to the* transfer of his or her tax refunds.

Transcript of Proceedings on November 27, 1984 at 15.

**14.** Of course, this decision also applies to other members of the plaintiff class whose forum states provides them with a pre-transfer hearing.