**Robert J. SMITH, Plaintiff,**

v.

**ONONDAGA COUNTY SUPPORT COLLECTION UNIT, and Robert J. Stone as Commissioner of Onondaga County Department of Social Services, and Ceasar Perales, Commissioner of the New York State Department of Social Services, and Donald Regan, Secretary of the United States Department of Treasury; and Margaret Heckler, in her official capacity as Secretary of the United States Department of Health and Human Services, Defendants.**

**Paul JONZA, Plaintiff,**

v.

**CAYUGA COUNTY SUPPORT COLLECTION UNIT, and Commissioner of Cayuga County Department of Social Services, and Ceasar Perales as Commissioner of New York State Department of Social Services, and Donald Regan, as Secretary of Treasury, and Margaret Heckler, in her capacity as Secretary of the United States Department of Health and Human Services, Defendants.**

Nos. 83–CV–1662, 83–CV–1663.

United States District Court,
N.D. New York.

Oct. 9, 1985.

Vincent J. Finocchio, Jr., Syracuse, N.Y., for plaintiffs.

Robert Abrams, Atty. Gen. for State of N.Y., Albany, Patricia E.P. Vincent, Asst. Atty. Gen., Syracuse, N.Y., for Ceasar Perales.

Legal Div. of Onondaga County, James Morrissey, John Hughes, Syracuse, N.Y., for Onondaga County Collection Unit and Robert J. Stone.

Robert P. Lewis, Auburn, N.Y., Cayuga County Collection Unit and Cayuga Comr.

Frederick J. Scullin, Jr., U.S. Atty., Edward R. Broton, Asst. U.S. Atty., Syracuse, N.Y., Louis J. Lombardo, Trial Atty., Tax Div. U.S. Dept. of Justice, Washington, D.C., for Regan and Heckler.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Plaintiffs are New York State residents whose income tax refunds have been withheld by the Internal Revenue Service and turned over to New York State to satisfy allegedly unmet child support obligations.[1] They challenge the constitutionality of the federal-state tax intercept program created by section 2331 of the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, 95 Stat. 357, 860 (1981) alleging that the tax intercept program's pre-intercept notice and hearing provisions are inadequate and thus, unconstitutional under the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs seek declaratory and injunctive relief as well as damages.

Presently before the court are cross motions for summary judgment. For the reasons set forth below, the plaintiffs' motion and the State/County defendants' motions are granted in part and denied in part. The motion of the Secretary of Health and Human Services and the Secretary of the Treasury is granted.

## BACKGROUND

Plaintiffs Smith and Jonza are New York State residents whose marriages ended in divorce. Mr. Smith has two children by his former wife, Mr. Jonza has four. Subsequent to the divorce, both former wives and their children received Aid to Families with Dependent Children (AFDC). As a prerequisite to receiving AFDC benefits, the women assigned their rights to receive child support payments to the State of New York.

In 1977, the Onondaga Family Court ordered plaintiff Smith to pay thirty dollars per week in child support to the Onondaga County Support Bureau. Mr. Smith made sporadic payments but, as of February,

---

**1.** Actions 83–CV–1662 and 83–CV–1663 were consolidated pursuant to Fed.R.Civ.P. 42(a) on

April 17, 1985.

1985, he owed some $1,600.00 to the State. Smith's name was certified to the IRS for interception of his 1983 income tax refund. He was notified of the potential interception by defendant Heckler on October 14, 1983. The notice stated that Smith's name was being certified to the IRS for collection of past-due support. The notice also stated that he could contact the Onondaga Support Collection Unit before November 25, 1983 if he believed he did not owe the money. The notice provided the address and telephone number of the agency, but rather than contact the agency, Mr. Smith commenced this action.

Mr. Jonza's situation is similar to that of Smith. He was ordered to pay thirty-five dollars per week to the State Enforcement Board as of December 5, 1977. This amount was eventually increased to $110 per week. On July 13, 1983, Jonza received notice from the Cayuga County Support Collection Unit that he was some $5,000.00 in arrears and that, unless his account was current by October 31, 1983, his name would be certified to the IRS for interception of his tax refund. Defendant Heckler sent Jonza the same notice that was sent to Smith.

The plaintiffs contend that the notice they received was constitutionally defective in that it did not specify possible defenses and did not provide for adequate hearing procedures before interception. The federal defendants contend that, even if a more detailed notice and hearing are required, they are not the proper parties to provide them. The State and County defendants contend that the plaintiffs lack standing to raise the issue, and that in any event the procedures utilized were constitutionally adequate. In the alternative they argue that newly implemented State regulations have corrected any possible defects in the notice thereby rendering the request for injunctive relief moot. They further contend that the Eleventh Amendment bars any damage award against the State.

## DISCUSSION

Pursuant to Fed.R.Civ.P. 56(c), a party is entitled to summary judgment when it has demonstrated "the absence of any material factual issue genuinely in dispute" and that it is entitled to judgment "as a matter of law." *See Universal City Studios, Inc. v. Nintendo Co., Ltd.,* 746 F.2d 112, 115 (2d Cir.1984); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). The parties here are essentially in agreement as to the content and timing of the notice received by the plaintiffs. At issue here is the adequacy of that notice.

Before turning to the merits of the case, a brief outline of the statutory scheme is warranted.[2] The tax intercept program is an effort by the Federal Government and State Agencies to alleviate the burden placed on welfare systems by single parents and their children. Many of these families are owed substantial amounts of child support from an absent ex-spouse. When the custodial parent applies for AFDC benefits, he or she is required to assign the right to receive child support payments to the state agency. If the non-custodial parent falls behind in child support payments, the state may certify his or her name to the Secretary of Health and Human Services who then sends the name to the Secretary of the Treasury and the Internal Revenue Service. The non-custodial parent's income tax refund is then intercepted and sent to the appropriate state agency.

The plaintiffs here challenge the pre-intercept notice and hearing procedures provided by both the federal and state defendants. This court recently examined a closely related issue in *Presley v. Regan,* 604 F.Supp. 609 (N.D.N.Y.1985). In *Presley,* the plaintiff was a New York resident whose tax refund had been intercepted on behalf of the State of Michigan. Michigan had agreed to provide the plaintiff with a constitutionally adequate notice and hearing, thus the only issue left for the court to decide was whether the plaintiff was enti-

---

**2.** For a more detailed description of the tax intercept program see this court's opinion in

*Presley v. Regan,* 604 F.Supp. 609 (N.D.N.Y. 1985).

tled to a hearing in his home state. The court held that due process does not require a hearing in the taxpayer's home state. *Presley,* 604 F.Supp. at 615. Here the issue is not where a hearing must be held, but rather whether the plaintiffs received all the process they were due prior to the interception of their tax refunds.

Due process requires, at a minimum, that any significant deprivation of property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). The "root requirement" of the due process is that a person is entitled to a hearing before he is deprived of his property. *Cleveland Board of Education v. Louder-mill,* —— U.S. ——, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (citations omitted). The opportunity to be heard must be "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (*quoting Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965) ). In *Presley* this court held that interception of a citizen's tax refund is a significant deprivation of property. *Presley,* 604 F.Supp. at 614. *See also Coughlin v. Regan,* 584 F.Supp. 697, 707 (D.Maine 1984); *Nelson v. Regan,* 560 F.Supp. 1101, 1106 (D.Conn.1983), *aff'd on other grounds,* 731 F.2d 105 (2d Cir.1984), *cert. denied sub nom. Manning v. Nelson,* —— U.S. ——, 105 S.Ct. 175, 83 L.Ed.2d 110 (1984); *Marello v. Regan,* 574 F.Supp. 586, 595 (D.R.I.1983); *Sorenson v. Secretary of the Treasury,* 557 F.Supp. 729, 737 (W.D. Wash.1982), *affirmed,* 752 F.2d 1433 (9th Cir.1985).

Five courts have addressed the question of whether pre-deprivation notice and hearing are required by due process. Of the five, three have held that some form of pre-deprivation notice and hearing is required. *Jones v. Ritsema,* No. 82–73573, slip op. (E.D.Mich. Feb. 29, 1984); *Marcello*

*v. Regan,* 574 F.Supp. 586 (D.R.I.1983); *Nelson v. Regan,* 560 F.Supp. 1101 (D.Conn. 1983). Two courts found that no hearing is constitutionally required before transfer of an obligated parent's refund. *Jahn v. Regan,* 584 F.Supp. 399 (E.D.Mich.1984)[3]; *Keeney v. Secretary of Treasury,* No. 83–2427, slip op. (C.D.Cal. Oct. 11, 1983). All of the courts applied the test set forth by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The *Mathews* test provides for a balancing of three factors:

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

After weighing these factors in *Presley,* this court held that the federal defendant was not the proper party to provide so-called interstate plaintiffs with a hearing in their home states. *Presley,* 604 F.Supp. at 614–15. The court held:

> Even if the first two factors both weighed in favor of the plaintiffs, the third factor would tip the scale in favor of the [federal] defendants. The plaintiffs bring this action seeking a declaration that the federal government is the proper party to provide interstate plaintiffs with a hearing in their home state. However, this court agrees with the court in *Sorenson* that there "is something uniquely inappropriate in involving the Federal Government" in the hearing process. (citation omitted). Although the federal government has an indirect interest in maintaining the fiscal health of the AFDC program, it has little or no interest in the plaintiffs' tax refunds or the intercept program itself. The federal

---

**3.** Notwithstanding the decision in *Jahn,* Michigan follows the procedures set forth in *Jones v.*

*Ritsema,* No. 82–73573 slip op. (E.D.Mich. Feb. 29, 1984).

government's role in the tax intercept program is merely to act as the states' bill collector. The IRS acts as a kind of clearinghouse, shuttling the refunds to either the plaintiff or a state agency on behalf of the plaintiff. (citation omitted). Moreover, the financial and administrative burdens involved in implementing a procedure for holding predeprivation hearings on a federal level would be prohibitively high.

*Presley,* 604 F.Supp. at 614–15.

 The court now holds that this reasoning is as applicable to intrastate plaintiffs as it is to interstate plaintiffs. The federal government is simply not the proper party to provide taxpayers with due process. That is not to say, however, that taxpayers are not entitled to due process prior to interception and transfer of their refunds. With regard to the State and County defendants it is likely that the *Mathews* factors would tip in favor of the plaintiffs, but it is not necessary for the court to evaluate the factors as New York State has already instituted constitutionally adequate procedures.[4] Since 1984, delinquent taxpayers have received a detailed

**4.** The notice sent by New York State reads as follows:

IMPORTANT INFORMATION REGARDING YOUR INCOME TAX REFUNDS AND OVERDUE CHILD SUPPORT PAYMENTS OR ARREARS

Our records indicate that you are overdue in making your scheduled child support payments, and/or have an unpaid balance on your court ordered child support arrears, in the amount shown in the "Special Notice" on the enclosed billing statement. This amount only represents the money that you owe as a result of your children receiving public assistance.

The law says that we may have the right to take all or part of your tax refund if you owe past-due child support or court ordered arrears. If you do not pay the amount shown on your bill by *November 15, 1984,* we will take action to have your Federal and/or New York State and New York City income tax refund taken to pay your overdue or unpaid child support.

However, we cannot keep your refund if you pay the stated amount, or have already paid that amount and show us that it has been paid, or you do not owe the money. You may not owe us the money for a number of reasons which include the following:

1. WRONG PERSON. You are not the person identified as owing child support.

2. FAILURE TO ASSIGN SUPPORT. Support rights of a child you have been ordered to support were never assigned to the Department of Social Services.

3. NO PUBLIC ASSISTANCE PAID. Your child was not or is not getting public assistance (which gives us the right to the support).

4. NO COURT ORDER. You are not under court order to pay support; or your support order was vacated by the court.

5. WRONG AMOUNT. The amount shown on your bill is not right because a payment you made was not credited to you, or the balance due was not accurately computed, or the weekly/monthly amount due or arrears balance is incorrect or was changed.

6. CHANGED CIRCUMSTANCES. Because of changed circumstances you may have your support order changed, even as to payments you already owe. These circumstances include loss of your job or the fact that you earned less money than you thought you would. If you believe that you should not pay the amount due for this reason, you have the right to ask the Family Court for an order directing that your support order be changed. This may be accomplished only by the filing of a formal petition in Family Court for that purpose.

If you have a defense for not paying the amount we say you owe, you may have us review your file and your reason for not paying. To obtain a review of your case, you must call or write to us at the address and telephone number indicated in the billing statement. If your billing statement is from the Support Collection Unit in one of the New York City boroughs, you must call (212)245–9200. You may be represented by an attorney or other person when you ask us to review your case. If you do not have an attorney or friend to help you, free legal services may be available at your local legal services or legal aid organization.

When you call our office to make arrangements to discuss your case and your reasons for not paying, clearly state your name, account number, and the issue involved in your case. We will tell you what you need to show in order to prove that you have a defense for not paying, and we will also review your file for any errors. At this time, you may also request to review your file and your records of payment to see if they are correct. Copies of your records will be given to you if you ask us for them.

In order to prove your defense, you will then be required to send us copies of written documents showing that you do not owe the money. You may include a written explana-

notice that lists possible defenses and explains the procedures for obtaining a hearing. The notice also explains that certain problems can only be resolved by the New York State Family Court and that final agency action may be appealed by bringing an Article 78 proceeding in the New York State Supreme Court.

■ The only remaining question is whether plaintiffs received adequate pre-intercept notice and opportunity to be heard. It is clear that Mr. Smith and Mr. Jonza did not receive all the process they were due. The notice received by Smith and Jonza did not list defenses or appeal procedures. Neither plaintiff was afforded an opportunity for a hearing. However, it is difficult to see how the plaintiffs were injured by their lack of notice and opportunity to be heard. Both plaintiffs have raised challenges to the intercept that must eventually be resolved by the Family Court, thus the defendants have argued that even if the plaintiffs had been afforded adequate due process, the agency would have been unable to grant them the relief they seek. Nevertheless, the plaintiffs should have afforded an adequate predeprivation notice and hearing. Injunctive and declaratory relief are an inappropriate remedy, however, as current New York State procedures fully comply with due process requirements. Moreover, there is no evidence of any actual injury to the plaintiffs, thus, any damage award would be limited to nominal damages for the constitutional deprivation inflicted by the State. *See Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Bradley v. Coughlin*, 671 F.2d 686 (2d Cir.1982); *Huntley v. Community School Board of Brooklyn*, 579 F.2d 738 (2d Cir.1978); *McCann v. Coughlin*, 698 F.2d 112 (2d Cir.1983). The court, however, is barred from awarding damages against the State by the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). In lieu of damages the court orders that plaintiffs Smith and Jonza be afforded hearings under the New York State procedures set forth in footnote 4, *supra*. The court expresses no opinion as to the merits of the plaintiffs' claimed defenses.

tion of why you did not pay. If you do not have written documentation or if you need to present evidence other than written documents, you may have a conference with us. At the conference you will be able to present written and oral evidence about your case and your defenses for not paying. The conference is the last step in our review of your case and the decision after the conference will be final.

After you send in written evidence or have a conference, you will receive a written decision of the reasons for our action whether or not we agree with you. Our decision will be based only upon the evidence you present and the evidence in your file.

If we decide that you have a defense for not paying your child support, we will not keep your tax refund. However, if your refund is paid to us even though we decided that it should not be or that only a part of it should be, we will repay you for the amount we decided you did not owe. The US Internal Revenue Service or the New York State Department of Taxation and Finance will send you a letter telling you that it paid your refund to us to pay your child support. Repayment will be made within 30 days of your bringing that letter to the Support Collection Unit.

If you do not believe that our final decision after the conference is correct, you may seek review of that decision by the Supreme Court of the State of New York by bringing a legal proceeding authorized by Article 78 of the Civil Practice Law and Rules. This legal proceeding must be brought within four months of the date that you are notified of our final decision. The Court will review our decision to see if we were correct. You should see an attorney about how to bring an Article 78 proceeding. If you have no attorney or cannot affort [sic] to hire one, you should call your local legal services organization for help.

You are reminded that if you believe that the amount of support ordered by the Court is too high or that your payments should be suspended, you may petition the Family Court to change the amount or to suspend payment. Also, if you are being denied visitation of your children, you should contact the Court. The Department *cannot* review the amount of a court order, suspend payments of ordered support or enforce visitation rights; you must contact the Family Court to resolve these matters.

Sincerely,
Supervisor, Support Collection Unit

Finally, plaintiffs have requested an award of attorney's fees pursuant to 42 U.S.C. § 1988.[5] Section 1988 provides, in relevant part:

In any action or proceeding to enforce a provision of [section 1983] of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

In a recent Supreme Court decision the Court stated:

If a plaintiff prevails in a suit covered by § 1988 fees should be awarded as costs 'unless special circumstances would render such an award unjust.'

*Kentucky v. Graham*, —— U.S. ——, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). States may be liable for attorney's fees when State officials are sued in their official capacities and the plaintiff prevails. *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *McCann v. Coughlin*, 698 F.2d 112 (2d Cir.1983). The Second Circuit stated in *McCann*:

The policy underlying [§ 1988] is to encourage litigants to assume the role of private Attorney General. This policy may be served by granting a fee request even where a plaintiff is unable to prove actual damages resulting from his constitutional deprivation. The Supreme Court's decision in *Carey v. Piphus* ... makes clear that a party may prove a violation of his due process rights and still be unable to show the requisite causation required for an award of compensatory damages. The fact that a plaintiff is awarded only nominal damages does not indicate that he has been unsuccessful or has not prevailed on his claim.

*McCann*, 698 F.2d at 129. *See also Gingras v. Lloyd*, 740 F.2d 210, 212 (2d Cir. 1984) ("The thread common to ... interpretations of 'prevailing' is that plaintiff has achieved some vindication of his rights as a result of the lawsuit.")

Plaintiffs Smith and Jonza were each deprived of their right to procedural due process. They are now entitled to proper notice and opportunity to be heard. Thus, they have prevailed within the meaning of § 1988. Attorney's fees are awarded to plaintiffs to the extent that they have prevailed in an amount to be determined by the court upon presentation to the court of proper documentation. *See McCann*, 698 F.2d at 129.

IT IS SO ORDERED.

---

5. The court notes that plaintiffs did not specifically refer to this action as one brought pursuant to 42 U.S.C. § 1983, however, it is a suit to redress constitutional violations inflicted under color of state law and the court will treat the action as one commenced pursuant to § 1983.