# HENRY v DEPARTMENT OF. HEALTH AND REHABILITATIVE SERVICES

## Case No. 88-3145

State of Florida, Division of Administrative Hearings

October 21, 1988

## APPEARANCES OF COUNSEL

**Jimmie L. Henry,** pro se.

**Susan Thompson,** for respondent, Department of Health and Rehabilitative Services.

## OPINION OF THE COURT

ROBERT T. BENTON, II, Hearing Officer.

### *RECOMMENDED ORDER*

This matter came on for hearing in Tallahassee, Florida, before Robert T. Benton, II, Hearing Officer of the Division of Administrative Hearings, on September 13, 1988. Petitioner appeared on his own behalf, and filed a proposed recommended order on September 26, 1988. Respondent, who has filed no proposed recommended order, appeared through counsel.

On June 20, 1988, the Division of Administrative Hearings received an "Amended Notice" advising that the Department of Health and Rehabilitative Services (HRS) had "received a request for a formal administrative hearing." Although the "Amended Notice" recited that "copies of pleadings and papers heretofore filed . . . are attached," no request was in fact attached nor did the single attachment reveal anything about the substance of the dispute.

A prehearing order was accordingly entered requiring the parties to state concisely facts and issues in dispute, but the parties failed to comply. At hearing, it was made to appear that the controversy raised the following

## ISSUE

Whether petitioner should receive a federal income tax refund HRS has intercepted and proposes to apply against petitioner's public assistance child support obligation, even though he has fully complied with the judgment establishing the obligation?

## FINDINGS OF FACT

1. On May 16, 1984, HRS obtained a final judgment of paternity against Jimmie L. Henry, petitioner in these proceedings. *Henrietta Payne and State of Florida Department of Health and Rehabilitative Services v Jimmie Henry and Woodrow Grissett,* No. 81-10950-CA (4th Cir.). The judgment declared Mr. Henry the father of Shea Bernard Anderson, established the "sum of $2656.00 . . . as a public assistance child support obligation owed by Jimmie Henry to the State of Florida," ordered petitioner to pay $150 support payments for the child monthly, and ordered that "with each payment [the petitioner] shall make an additional payment of $25.00 per month until the [public assistance child support] obligation . . . is paid in full."

2. The public assistance child support obligation arose because of payments HRS made, before paternity was determined, for the benefit of Shea Bernard Anderson under the Aid for Dependent Children program, payments which were "IV-D services" provided by a "IV-D agency."

3. Since entry of the final judgment of paternity, petitioner, who has since married and had other offspring, has made every payment required by the judgment, when required. As of September 11, 1988, his public assistance child support obligation had been reduced from $2,656.00 to $1,374.40.

4. HRS has intercepted all of the federal income tax refund owed

**187**

petitioner for calendar year 1987, which amounts to $664, and proposed to apply it against his public assistance child support obligation.

## CONCLUSIONS OF LAW

Even though the foregoing findings of fact reflect stipulations the parties reached, once they arrived for the final hearing, so that no dispute of material fact remains, the parties also stipulated to proceeding under Section 120.57(1), Florida Statutes (19870, instead of under subsection two, as the statute would have required, absent such an agreement.

In entering the final judgment of paternity, the circuit court adhered faithfully to Section 409.2561, Florida Statutes (1987), which provides:

> If there is no prior court order establishing an obligation of support, the court shall establish the liability of the responsible party, if any, for reimbursement of public assistance moneys paid. Priority shall be given to establishing continuing reasonable support of the dependent child.

Evidently, the court's judgment allocates the bulk of limited resources to "establishing continuing reasonable support for the child." Section 409.256(1), Florida Statutes (1987). See *State Department of Health and Rehabilitative Services v King,* 390 So.2d 1224 (Fla. 1st DCA 1980).

Even when judicial allocations of this kind cause public assistance child support obligations owed HRS to be repaid piecemeal over long periods, it should not be presumed, as HRS concluded in *Department of Health and Rehabilitative Services v Archie L. Atkins,* No. 86-2681 (Final Order; Dec. 8, 1966) that the court entered the judgment (or the hearing officer who recommended that HRS not abrogate the judgment) has reached "an absurd result." At page 2.

In scheduling monthly payments, the circuit court had first to assess the extent and importance of other demands on petitioner's income, which at least by now include the support of other dependents. The court had then to allocate the money available for Shea Bernard Anderson, first to his "continuing reasonable support," then to the discharge of an obligation which, after all, only became clear after petitioner (and not the co-defendant in the paternity action) was adjudged the child's father.

Because HRS "is designated as the state agency responsible for the administration of the child support enforcement program, Title IV-D of the Social Security Act, 42 U.S.C. Sec. 1302," Section 409.2557, Florida Statutes (1987), HRS is entitled, in appropriate cases, to invoke

the federal income tax refund offset procedures described in *Smith v Onondaga County Support Collection Unit,* 619 F.Supp. 825 (N.D.W.Y. 1985), and set out at 42 U.S.C. Sec. 664.

HRS is entitled to avail itself of this collection mechanism if, as assignee or otherwise, it is owed "past-due support." For present purposes, 42 U.S.C. Sec. 664(c)(1) defines "past-due support" as

the amount of delinquency, determined under a court order . . . for support and maintenance of a child . . .

To like effect are federal regulations promulgated under the authority of 42 U.S.C. Sec. 664(b), which provide:

Past-due support . . . qualifies for offset if:

\* \* \*

(2)(ii) The support has been delinquent for three months or longer.

45 CFR Section 303.72

HRS must establish not only a public assistance child support obligation exists, but also that the obligor is delinquent. *Charles D. Youmans v Department of Health and Rehabilitative Services,* No. 88-2365 (DOAH; Aug. 26, 1988)

In such cases, the "federal government's role in the tax intercept program is merely to act as the states' bill collector." *Presley v Regan,* 604 F.Supp. 609, 614 (N.D.W.Y.) The "bill" HRS claims the right to collect here is the obligation adjudicated in the final judgment of paternity entered against petitioner. The parties agreed, however, that petitioner is not delinquent, because he has complied with the terms of the judgment. By claiming a right to set off petitioner's tax refund in these circumstances, HRS asserts, in effect, nothing less than authority to undo the judgment of the court that established the public assistance child support obligation and provided for the manner of its discharge. HRS has no such authority.

In cases like the present one, the federal statute provides that HRS forward the intercepted refund to the taxpayer.

In any case in which an amount was withheld . . . and paid to a State, and the State subsequently determines that the amount certified as past-due support was in excess of the amount *actually owed at the time the amount withheld is to be distributed* to or on behalf of the child, the State shall pay the excess amount withheld to the named individual thought to have owed the past-due support . . .

42 U.S.C. Section 664(a)(3)(D) (emphasis supplied)

189

Because the evidence showed that petitioner was not at any time delinquent in his child support obligations, it is

RECOMMENDED:

That HRS pay petitioner $664 forthwith.

DONE and ENTERED this 21st day of October, 1988, in Tallahassee, Florida.