534 A.2d 1090

**Karen LAUB, Appellant,**

**v.**

**Stanley ZASLAVSKY, Appellee.**

Superior Court of Pennsylvania.

Argued May 21, 1987.

Filed Dec. 16, 1987.

Norman A. Oshtry, Philadelphia, for appellant.

Dennis P. Talty, Philadelphia, for appellee.

Before McEWEN, JOHNSON and HOFFMAN, JJ.

McEWEN, Judge:

We are here called upon to determine whether arrearages, which had been created solely as a result of the retroactive application of a support order, constitute "past-due support" as that term is used in Section 464 of the Social Security Act, subjecting the obligor to the provisions of the federal income tax refund intercept statutes. The distinguished Judge Jerome A. Zaleski concluded that such arrearages do not constitute "past-due support" and cannot form the basis upon which to intercept a federal income tax refund owed to the obligor. We agree.

This appeal has been taken from an order which granted the petition of appellee to delete an Internal Revenue Service intercept which had been placed upon his federal income tax refund check as a result of alleged arrearages in child support payments owed to appellant.

Appellee originally became subject to a court order for support when the court, on September 15, 1978, directed that he pay the sum of $85.00 per week for support of two

children. The order was subsequently modified by agreement to $125.00 per week, effective February 27, 1980. When, four years later, appellant sought a further increase, the court, on December 28, 1984, entered an order increasing the support obligation to $400.00 per week. Since the increased order was, pursuant to Pa.R.C.P. 1910.17, deemed effective as of the date of the filing of the petition to modify, specifically, March 2, 1984, arrearages in the amount of $11,825.00 were immediately created.[1] As a result, the court ordered appellee to pay, in addition to the sum of $400.00 per week for support, the sum of $10.00 per week toward the arrearages which had been created by the modification order.

Ten months later, in October 1985, appellee was notified by the IRS Intercept Unit of the Domestic Relations Branch of the Court of Common Pleas of Philadelphia County that his federal income tax refund check would be intercepted and that any refund money seized would be used to offset the $14,255.00 arrearages for support. Appellee filed a petition in the Court of Common Pleas requesting the court to delete the intercept, asserting that the intercept was improper because the arrearages were not a result of appellee's failure to make any of his child support payments. Rather, he asserted, the arrearages existed solely because the December 28, 1984, support order had been given retroactive effect. The court, after argument, granted appellee's petition to delete the intercept.[2]

■ Appellant contends that it was error for the hearing court to delete the IRS intercept, asserting that the inter-

1. Rule 1910.17(a) of the Pennsylvania Rules of Civil Procedure provides, in pertinent part:
   (a) An order of support shall be effective from the date of the filing of the complaint unless the order specifies otherwise. . . .

2. It has been said that the hand of the tax collector cannot be stayed, nor his grasp and grip matched. The tax collector in this instance, however, is not the clenching agent of excise, since the refund has been forwarded to the domestic relations agency and the hearing court has directed that the intercepted funds be retained there pending the conclusion of appeal proceedings. The supplemental record suggests that the IRS refund totaled $4,429.67.

cept was proper because the statute applies, without exception, to all arrearages, whether created as a result of the retroactive application of a support order or from a failure to timely remit amounts due under the order.

Section 464(a)(2)(A) of the Social Security Act directs the Secretary of the Treasury to "intercept" federal income tax refund checks payable to persons whose child support payments are "past due":

§ 664. Collection of past-due support from Federal Tax refunds

* * *

(a)(2)(A) Upon receiving notice from a State agency administering a plan approved under this part that a named individual owes *past-due* support.... the Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such individual.... If the Secretary of the Treasury finds that any such amount is payable, he shall withhold from such refunds an amount equal to such *past-due* support and shall concurrently send notice to such individual that the withholding has been made.... The Secretary of the Treasury shall pay the amount withheld to the State agency.... The State agency shall, subject to paragraph (e)(B), distribute such amount to or on behalf of the child to whom the support was owed.

42 U.S.C. § 664(a)(2)(A) (emphasis supplied).[3] The term "past due support" is defined by the statute as: "the

---

3. The Internal Revenue Code also authorizes the Secretary of the Treasury to intercept a delinquent parent's federal income tax refund check:

§ 6402. Authority to make credits or refunds
* * *
(c) Offset of past-due support against overpayments.
The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any *past-due* support (as defined in section 464(c) of the Social Security Act) owed by that person.... The Secretary shall remit the amount by which the overpayment is so reduced to the State collecting such support and notify the person making the overpayment that so

amount of a delinquency determined under court order ... for support and maintenance of a child...." 42 U.S.C. § 664(c)(1). Thus, the issue for our determination is whether arrearages which result *solely* from the retroactive application of a support order can be properly characterized as a "delinquency" under the statute, subjecting the obligor to the provisions of the intercept statute.

The word "delinquency" is defined by Black's Law Dictionary as "[f]ailure, omission, violation of law or duty. State or condition of one who has failed to perform his duty or obligation." Black's Law Dictionary 385 (5th ed. 1979). Similarly, Webster's New Collegiate Dictionary defines the word "delinquency" as "a debt on which payment is overdue." Application of these definitions to Section 464 of the Social Security Act suggests that the federal intercept program is intended to encompass those situations where a parent has failed to comply with his obligation to timely remit court ordered child support payments.

Though the issue be narrow and the dictionary valuable, when faced with the task of interpretation of a federal statute, we look to that ever and most profound authority— the federal courts. One such court has stated that the federal intercept program was to provide reimbursement to "state welfare agencies for monies spent to aid families *who have not received support payments* from a parent obligated to make such payments", *Presley v. Regan*, 604 F.Supp. 609, 611 (N.D.N.Y.1985) (emphasis supplied)[4], and

much of the overpayment as was necessary to satisfy his obligation for *past-due* support has been paid to the State....
26 U.S.C. § 6402(c). (emphasis supplied)
*Note:* Section 464 of the Social Security Act, cited in this section of the Internal Revenue Code, has been amended and is presently codified at 42 U.S.C. § 664.

4. The federal intercept program was originally applicable only to parents of children receiving Aid to Families with Dependent Children (AFDC) benefits, with the intercepted monies being paid to the state. However, Section 664 was amended in 1984 to include children ineligible to receive AFDC benefits and providing for the intercepted monies to be paid to the custodial parent. *See: Sorenson v. Secretary of Treasury*, 475 U.S. 851, 857 n. 5, 106 S.Ct. 1600, 1605 n. 5, 89 L.Ed.2d 855, 863 n. 5 (1986).

that the intercept was designed for use when a "non-custodial parent *falls behind* in child support payments." *Smith v. Onondaga County Support Collection Unit*, 619 F.Supp. 825, 827 (N.D.N.Y.1985) (emphasis supplied). Another federal court described the intercept program as an effort by which a state can recoup assistance payments which it has been compelled to advance "because [an obligor] *has defaulted.*" *Rucker v. Secretary of the United States*, 634 F.Supp. 598, 602 (D.C.Colo.1986) (emphasis supplied). We share the view reflected by these federal tribunals and conclude that the federal intercept program does not encompass situations where a parent has continually complied with his child support obligation, but where, nonetheless, arrearages are created as a result of the retroactive effect of an order of support.

While the issue of general interest and application is thus concluded, a bookkeeping question of specific application to this case remains. The record indicates that approximately $11,825.00 of appellee's accumulated arrearages resulted solely from the retroactive effect of the December 28, 1984 modification order. These arrearages cannot, as we have found, be considered to be "past-due support" under the intercept statutes.

■ Appellant, however, argues further that even if the arrearages created solely as a result of the retroactive effect of the support order of December 28, 1984, are not subject to the intercept statute, appellee's federal tax refund was properly intercepted because arrearages of more than $500.00 had accumulated as a direct result of the failure of appellee to timely remit his support payments.

Section 464(b)(2)(A) of the Social Security Act provides that the federal intercept program applies "where the state determines that the amount of the past-due support which will be owed at the time the withholding is to be made ... is equal to or greater than $500.00." 42 U.S.C. § 664(b)(2)(A). Appellant contends that appellee's child support account statement, which had been prepared by the IRS Intercept Unit of the Domestic Relations Branch of the Philadelphia

County Court of Common Pleas, indicates that, as of the date of the hearing on appellee's petition to delete the intercept, arrearages of more than $500.00 had accumulated which were *separate from* and *in addition to* the $11,825.00 in arrearages which had been created as a result of the December 28, 1984 modification order. While the record before this Court suggests that there is merit to appellant's contention,[5] we are unable to conclusively determine, from the child support account statement, whether arrearages equal to or in excess of $500.00 had accumulated as a result of appellee's failure to timely remit his child support payments. As the hearing court made no finding as to the exact amount of the arrearages, the case must be remanded for a determination of whether, as of the date of the hearing on appellee's petition to delete the IRS intercept, the amount of his arrearages, excluding the arrearages created as a result of the retroactive application of the December 28, 1984 order, was equal to or greater than $500.00. It is to be noted that if, on remand, the court determines that the amount of such arrearages are equal to or greater than $500.00, then, of course, the federal income tax refund due appellee, which was intercepted as a result of the October 24, 1985, IRS intercept and which is presently being held on deposit by order of the hearing court, must be used to offset such arrearages in the manner provided for by the intercept statutes.

Order affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting:

I believe that the arrearages present in this case constitute past due support and are thus subject to the provisions

---

5. We note that the notice directed to appellee by the IRS intercept unit indicated that appellee had accumulated arrearages of $14,255.00 at that time while the arrearages created by the retroactive application of the support order were $11,825.00.

of the federal income tax refund intercept program as set forth in 42 U.S.C. § 664. Accordingly, I dissent.

On March 2, 1984, Appellant filed a petition for a modification of a support decree seeking an increase in the amount of support payments. On December 28, 1984, a court order was issued increasing the amount of weekly support from $125 to $400. Pursuant to Pa.R.C.P. 1910.17, the order was made retroactive to March 2, 1984, the date of filing, and was thus effective as of that date. Arrearages resulted from the ordered increase and Appellee was ordered to pay $10 per week toward the arrearages. In October 1985 Appellee was notified that any federal income tax refund to which he might be entitled might be intercepted and used to offset the arrearages. Thereafter Appellee filed a petition requesting that the intercept be deleted on grounds that the arrearages did not result from his failure to make child support payments. The petition was granted.

This case turns on the interpretation of the phrase "past due support" as used in 42 U.S.C. § 664(a)(2)(A). In my view, it is not necessary to glean the dictionary to obtain a definition for "past due". The term is clearly defined by statute and a thorough and accurate reading of the statute reveals that the arrearages involved in the instant controversy are past due within the meaning of the statute.

The definition of past due support is set forth in 42 U.S.C. § 664(c)(1) as follows:

(1) Except as provided in paragraph (2), as used in this part ... the term 'past-due support' means the amount of a delinquency, determined under a court order, or an order of an administrative process established under State law, for support and maintenance of a child, or of a child and the parent with whom the child is living. (2) For purposes of subsection (a)(2), the term 'past-due support' means only past-due support owed to or on behalf of a minor child.

42 U.S.C. § 664(c)(1). In spite of this clear language, the majority concludes that "the federal intercept program does not encompass situations where a parent has continually

complied with his child support obligation, but where, none-theless, arrearages are created as a result of the retroactive effect of an order of support." The majority reaches this conclusion by interpreting the statute to mean that "the federal intercept program is intended to encompass those situations where a parent has failed to comply with his obligation to timely remit court ordered child support payments." I view such a narrow interpretation of the statute as unsound.

In my opinion the majority's interpretation of the statute places undue emphasis on the obligor parent's conduct as opposed to the recipient's right to receive support payments. The primary purpose of the federal income tax refund intercept program is not to regulate or punish the parent's conduct. Rather the objective of the program is to ensure that a child who is entitled to financial support from his parent in fact receives that support.

Moreover, the source of the delinquency or the reason for the past due status of the support payments is of no import. The statute in no way limits or excludes any source of delinquency. Neither does the statute state that the delinquency must result from any particular source or that it must be caused by an individual's failure to pay. In fact the statute merely requires that the support be past due. Clearly then the intercept program is meant to encompass any arrearages regardless of their origin.

It is not relevant that the obligated parent has been ordered to make payments on past due amounts and has adhered to the mandated payment schedule. By statute amounts that are past due are subject to the provisions of the intercept program. *See* 42 U.S.C. § 664(a)(2)(A). The statute does not provide an exception for an individual who makes payments which decrease but do not discharge the delinquency. Such an individual nevertheless remains subject to the intercept program. To conclude otherwise would allow any individual owing past due support but complying with a payment plan to escape the effects of the intercept program. I see no support in the statute for such a

conclusion and therefore dissent. I do not agree that Appellee's payment of an additional $10 per week toward the delinquent amount entitles him to an exemption from the intercept program.

Assuming *arguendo* that the majority's interpretation of the statute is sound, proper application of that interpretation to the circumstances of the instant case would nevertheless result in the interception of Appellee's federal income tax refund check.

Contrary to the majority's conclusion, the arrearages in the instant case did not result *solely* from the retroactive application of the support order. More accurately the arrearages arose from the court's determination that, as of March 2, 1984, Appellee's children were entitled to receive, and Appellee was obligated to pay, an additional $275 weekly. Thus any portion of the increased amount which was not paid each week when due became past due. As of October 1985, when Appellee was informed of the intercept, the arrearages still remained unpaid, well over a year after the effective date of the support order and several months after the order was entered.

Moreover, contrary to the majority's position, the case at bar does not involve a parent who has "continually complied with his child support obligation." As noted above, Appellee's obligation was to pay $400 weekly child support effective March 2, 1984. Appellee has yet to pay amounts equal to the debt imposed upon him by the support order. Consequently, I fail to see how he has "continually complied with his child support obligation."

It is my view that the majority's refusal to apply the intercept provisions in the instant case dilutes the retroactive effect of the support order. While the order by virtue of its effective date clearly indicates that Appellee's children were entitled to receive increased support as of March 2, 1984, the majority has decided to deny Appellee's children access to the financial support to which they are entitled. With this I cannot agree.