HAYWOOD C. DAVIS, Petitioner v. NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, DIVISION OF SOCIAL SERVICES, CHILD SUPPORT ENFORCEMENT SECTION, Respondent

No. COA96-691

(Filed 3 June 1997)

1. Setoffs § 7 (NCI4th)— child support assistance—arrearage—compliance with court order—state tax refund

A state agency which had paid support for petitioner's illegitimate child could intercept petitioner's state income tax refund to pay the arrearage pursuant to N.C.G.S. 105A-3(b) where the

Attorney General had not excepted petitioner from tax refund interception even though petitioner had complied with a court order that he pay $100 per month in child support and $10 per month toward the arrearage.

**Am Jur 2d, Counterclaim, Recoupment, and Setoff §§ 64-66.**

**2. Setoffs § 7 (NCI4th)— child support assistance—arrearage—compliance with court order—federal tax refund**

It was error for the trial court to permit the interception of petitioner's federal tax refund to pay arrears petitioner owed to a state agency for its payment of support for petitioner's minor child since plaintiff was in compliance with a court order to repay the agency and 42 U.S.C. § 664 does not provide for tax refund interception for past due support unless the taxpayer was delinquent in making court ordered payments.

**Am Jur 2d, Counterclaim, Recoupment, and Setoff §§ 64-66.**

**3. Administration Law and Procedure § 62 (NCI4th)— petition for judicial review—service on Secretary of DHR**

Petitioner properly served a petition for judicial review of a DHR tax refund interception decision on the Secretary of DHR pursuant to N.C.G.S. § 150B-46 rather than on the DHR's process agent pursuant to N.C.G.S. § 1A-1, Rule 4(j)(4).

**Am Jur 2d, Administrative Law 559.**

Judge WYNN concurring.

Judge MARTIN, Mark D., concurring in part and dissenting in part.

Appeal by petitioner from order entered 19 March 1996 by Judge W. Osmond Smith, III in Cumberland County Superior Court. Heard in the Court of Appeals 20 February 1997.

*Reid, Lewis, Deese, Nance & Person, by Renny W. Deese, for petitioner-appellant.*

*Attorney General Michael F. Easley, by Associate Attorney General Gerald K. Robbins, for respondent-appellee.*

DAVIS v. N.C. DEPT. OF HUMAN RESOURCES

[126 N.C. App. 383 (1997)]

LEWIS, Judge.

At issue in this appeal is whether an individual who has paid child support according to a court order but still owes arrears may have his federal and state tax refund intercepted by state agencies.

The facts in this case are undisputed. In January 1987, petitioner was adjudged to be the natural father of LaToyah Renee Davis, born 14 June 1984. He was ordered to pay $100.00 per month in child support and $10.00 per month towards the $1,391.00 in past support paid by respondent for the minor child. Petitioner had complied with this order as of the hearing date.

On 7 October 1993, a Notice of Intent to Intercept and Statement of Account was sent to petitioner stating that he owed $507.00 in child support arrears as of 1 July 1993. It further notified petitioner that his state and federal income tax refunds would be intercepted to pay these arrearages.

On 22 May 1994, petitioner sought a contested case hearing alleging that the tax intercept was improper because he had consistently made his court-ordered support payments. Respondent moved for summary judgment. An administrative law judge ("ALJ") recommended summary judgment for petitioner. However, the final agency decision reversed the ALJ and granted summary judgment for respondent. Petitioner appealed to Cumberland County Superior Court, which affirmed the agency's ruling. Petitioner now appeals to this Court.

Our standard of review in reviewing an agency decision depends upon the nature of the alleged error. *Walker v. N.C. Dept. of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). If the petitioner contends, and we agree, that the agency's decision was based on an error of law, including an error in statutory interpretation, our review is *de novo* and we may substitute our own judgment for that of the agency. *Friends of Hatteras Island v. Coastal Resources Comm.*, 117 N.C. App. 556, 567, 452 S.E.2d 337, 344 (1995).

On appeal, we find petitioner raises questions of statutory interpretation. Our review will be *de novo*. Petitioner contests respondent's ability to intercept his tax refunds since a court of competent jurisdiction has already determined how his arrears are to be repaid and he has faithfully followed the court's order. For this reason, he argues that respondent is not authorized to intercept his federal tax

refund under 42 U.S.C. § 664 or his state tax refund under N.C. Gen. Stat. section 105A-3(b).

## NORTH CAROLINA STATE INCOME TAX REFUND

[1] We first address the propriety of intercepting petitioner's state income tax refund. N.C. Gen. Stat. section 105A establishes a procedure by which debts owed to state agencies are deducted from state tax refunds. N.C. Gen. Stat. § 105A-1 (1995). G.S. 105A specifically provides:

> All claimant agencies shall submit, for collection under the procedure established by this Article, all debts which they are owed, *except debts that they are advised by the Attorney General not to submit because . . . an alternative means of collection is pending and believed to be adequate. . . .*

N.C. Gen. Stat. § 105A-3(b) (1995) (emphasis added). Petitioner contends that the emphasized language imposes an "affirmative duty" upon respondent to prove that the existing means of collection is inadequate and to obtain the Attorney General's advice before utilizing tax interception as a method of debt collection under the statute. We disagree.

"If the language of the statute is clear, this Court must implement the statute according to the plain meaning of its terms." *Roberts v. Young*, 120 N.C. App. 720, 724, 464 S.E.2d 78, 82 (1995). The plain meaning of the above statutory language clearly imposes a duty upon a state agency to intercept tax refunds of all persons who owes it money *except* in cases where the Attorney General instructs otherwise. Despite petitioner's contentions, the current statute does not impose a duty on the part of the agency to approach the Attorney General for an exception, nor does it provide for an exception in every case where an individual is in compliance with a court-ordered payment plan, even when the amount of money at issue is quite small. This is the statute's plain meaning; if the General Assembly intends otherwise, it must amend the statute. Our job is to interpret not to legislate. *E.g. Pinehurst, Inc. v. O'Leary Bros. Realty*, 79 N.C. App. 51, 63, 338 S.E.2d 918, 925, *disc. review denied*, 316 N.C. 378, 342 S.E.2d 896-97 (1986).

In the present case, it is clear that petitioner owed the state a debt. Both sides agree that the Attorney General did not except petitioner from tax refund interception. Therefore, under the terms of the statute, we must hold that respondent's interception of petitioner's

**DAVIS v. N.C. DEPT. OF HUMAN RESOURCES**

[126 N.C. App. 383 (1997)]

state tax refund was proper, even mandated, under G.S. 105A-3(b). The trial court's ruling on this issue is affirmed.

## UNITED STATES INCOME TAX REFUND

[2] On the issue of the propriety of the interception of his federal tax refund, petitioner argues that the arrears he owes do not constitute "past-due support" as required before intercept by 42 U.S.C. § 664. The federal and state laws are quite different. 42 U.S.C. § 664 defines "past-due support" as "the amount of a delinquency, determined under a court order." 42 U.S.C. § 664(c) (1985). Petitioner maintains that he has not been delinquent in paying under the court order and therefore does not owe "past-due support." We agree.

"Delinquency" is not defined in the statute. However, Black's Law Dictionary defines it as "[f]ailure, omission, violation of law or duty. Failure to make payment on debts when due. State or condition of one who has failed to perform his duty or obligation." Black's Law Dictionary 428 (6th ed. 1990). When put into the context of 42 U.S.C. § 664, this definition necessarily requires that a supporting parent fall behind in his or her court-ordered payments before having his or her federal tax refund intercepted.

Other courts which have interpreted the definition of "past-due support" have reached the same conclusion. One court has stated, "The delinquency arises when the debtor falls behind in [the] court ordered payments." *In re Biddle*, 31 B.R. 449, 452 n. 3 (Bankr. N.D. Iowa 1983). Another court concluded that the federal intercept program does not apply where the supporting parent has continually complied with his court-ordered support obligation, but nonetheless owes arrears due to the retroactive effect of a modified order. *Laub v. Zaslavsky*, 534 A.2d 1090, 1092-93 (Pa. Super. Ct. 1987), *aff'd per curiam*, 565 A.2d 158 (Pa. 1989).

After analyzing the dictionary definition of delinquency and decisions in other jurisdictions interpreting 42 U.S.C. § 664, we conclude that interception of petitioner's federal tax refund in this case was improper. He has continually paid his court-ordered support and did not owe "past-due support" as defined by the statute. The trial court's ruling on this issue is reversed.

## CROSS-ASSIGNMENT OF ERROR

[3] Finally, we address respondent's cross-assignment of error. Respondent contends that the trial court erred in failing to dismiss the petition for judicial review because proper service was not

obtained. Respondent argues that petitioner did not serve the proper person according to Rule 4 of the North Carolina Rules of Civil Procedure and therefore the trial court did not have personal jurisdiction over it. We disagree.

N.C. Gen. Stat. section 150B-46 provides: "Within 10 days after the petition is filed with the court, the party seeking the review shall serve copies of the petition . . . upon all who were parties of record to the administrative proceedings." N.C. Gen. Stat. § 150B-46 (1995). Rule 4 provides that service upon an agency of the State should be made by serving the summons and complaint on its process agent. N.C.R. Civ. P. 4(j)(4) (1996 Cum. Supp.).

"[W]here one statute deals with a particular subject or situation in specific detail, while another statute deals with the subject in broad, general terms, the particular, specific statute will be construed as controlling, absent a clear legislative intent to the contrary." *Nucor Corp. v. General Bearing Corp.*, 333 N.C. 148, 154-55, 423 S.E.2d 747, 751 (1992). In the present case, G.S. 150B-46 deals with the service of a petition for judicial review of an agency decision, while Rule 4 applies generally to service in all civil matters. Therefore, since G.S. 150B-46 is more specific and there is no legislative intent to the contrary, its terms control. If the General Assembly had intended that petitions for judicial review be served only upon an agency's process agent, it could have put language mimicking that of Rule 4 in G.S. 150B-46. It did not. Therefore, we conclude that petitioner's service upon C. Robin Britt, Secretary of the Department of Human Resources, the person at the agency to whom the Office of Administrative Hearing sent copies of its orders during the administrative proceeding, was proper. We overrule respondent's cross-assignment of error.

In summary, we affirm the trial court's ruling approving respondent's interception of petitioner's state income tax refund and hold that summary judgment was proper for respondent on that issue. However, we reverse the trial court's conclusion that his federal refund could also be intercepted and remand for entry of summary judgment in favor of petitioner on this issue.

Affirmed in part; reversed in part and remanded.

Judge WYNN concurs with separate opinion.

Judge MARTIN, Mark D. concurs in part and dissents in part.

Judge WYNN concurring:

I concur with the majority opinion that we are bound by the plain meaning of the legislation in question. Nonetheless, I write separately to highlight the apparent inequity under the facts of this case that results from our necessary application of the plain meaning standard to the statutes in question.

In January 1987, following a paternity action brought by respondent against Mr. Davis, the district court adjudged him to be the father of a child born out of wedlock in 1984. The respondent next established, and the court found, that respondent had paid $1,391.00 in public assistance to the child's mother prior to the judgment of paternity in 1987. Accordingly, the court ordered Mr. Davis to pay:

> [T]he sum of $100.00 per month as child support plus the sum of $10.00 per month ($110.00 total) towards Past Public Assistance. Said payments shall commence on February 1, 1987, and shall be due and payable in cash or money order to the Clerk of Superior . . . [for] as long as . . . money continues to be owed for public assistance arrearages or cost recovery.

Thus, the district court order of 1987 established for the first time two essential elements necessary to show a debt for past child support: the legal obligation and the amount. It is undisputed that Mr. Davis timely met this court-ordered support obligation which means conclusively that this "alternate means" of collecting the arrearage which the respondent itself sought was effective. And while it is worthy to note that the Attorney General represents the respondent before this court, the statute, as Judge Lewis points out, permits but does not require the Attorney General to except petitioner from tax refund interception. Moreover, there is no indication that the respondents sought to have the trial court modify its order to allow for an increase in the monthly payment for the arrearage or to provide an additional means of collecting the arrearages.

Our legislature and Congress designed tax interception statutes to assist in the recovery of delinquent child support payments from irresponsible parents who failed to make child support payments. Mr. Davis made every payment in strict accordance with the child support and arrearage order and he continues to do so. Thus, on establishing his obligation and the amount owed by court order in 1987,

Mr. Davis, a retired military veteran, acted as a responsible parent.[1] With the ever increasing number of parents who irresponsibly fail to make child support payments, it would appear to me, that the resources expended by the state against responsible and timely paying parents, like Mr. Davis, could be better directed. In my opinion that represents the intent of legislation aimed at assisting in the collection of delinquent child support. However, because the statutes evidence a plain meaning on its face, we do need to examine the intent of either our legislature or Congress in enacting these statutes. As Judge Lewis astutely points out: "Our job is to interpret not to legislate."

Judge MARTIN, Mark D., concurring in part and dissenting in part.

I concur in the majority's conclusion that respondent may intercept petitioner's North Carolina tax refund to satisfy a delinquent child support obligation but dissent from its anomalous conclusion that respondent may not intercept petitioner's federal tax refund to offset further the same delinquent support obligation.

Title 42, section 664(c)(1) of the United States Code defines "past-due support" as "the amount of a <u>delinquency</u>, determined under a court order, . . . for support and maintenance of a child, or of a child and the parent with whom the child is living." 42 U.S.C. § 664(c)(1) (emphasis added). Under the federal regulations interpreting section 664(c)(1), "past-due support" is defined as "the amount of support determined under a court order or an order of an administrative process . . . which has not been paid." 45 C.F.R. § 301.1 (1997).

Notably, the majority wholly ignores the contextual definition of delinquency provided in the federal regulations, and instead relies heavily on a non-contextual definition of the term "delinquency"— "[s]tate or condition of one who has failed to perform his duty or obligation," BLACK'S LAW DICTIONARY 428 (6th ed. 1990). Despite our Supreme Court's clear mandate to construe ambiguous statutory language contextually rather than textually, *see Greensboro v. Smith,*

---

1. The record does not indicate whether during that interim period Mr. Davis made any payments directly to the mother towards the support of this child; but then, neither does the record show that either the mother or the respondent attempted to establish his paternity and more pertinent to this case, collect any amount of child support prior to the 1987 action. Indeed, the birth certificate does not even list Mr. Davis as the child's father.

241 N.C. 363, 366, 85 S.E.2d 292, 295 (1955) ("in cases of ambiguity . . . the language of the statute must be read not textually, but contextually . . . ."), the majority nonetheless applies its textual definition and opines that section 664(a)(2)(A) "necessarily requires that a supporting parent fall behind in his or her court-ordered payments before having his or her federal tax refund intercepted."

To the contrary, on 29 January 1987 petitioner was adjudged $1,391.00 in arrears on his child support obligation. The term "arrearage" is unambiguous and, whether read textually or contextually, has but one definition—money owed to another which is overdue and unpaid. BLACK'S LAW DICTIONARY at 109. Thus, the 29 January court order, which found petitioner owed $1,391.00 in arrearages, clearly indicates petitioner was delinquent on his support obligation. Therefore, relying solely on the plain language of section 664 and the 29 January order, respondent should be entitled to offset petitioner's arrearages with his federal income tax refund.

The majority also relies on *Laub v. Zaslavsky*, 534 A.2d 1090, 1092-1093 (Pa. Super. Ct. 1987), *aff'd*, 565 A.2d 158 (Pa. 1989) (per curiam), and *In re Biddle*, 31 B.R. 449, 452 n.3 (Bankr. N.D. Iowa 1983), to support its interpretation of section 664.

*Laub*, however, accords no support to the majority's interpretation of section 664. The Pennsylvania Superior Court concluded only that "the federal intercept program does not encompass situations where a parent has continually complied with his child support obligation, but where, nonetheless, <u>arrearages are created as a result of the retroactive effect of [a modified] order of support</u>." *Laub*, 534 A.2d at 1092 (emphasis added). In other words, the arrearages at issue in *Laub*, unlike here, were artificially created by operation of a procedural statute,[1] not by expenditure of state welfare resources. *Id.* at 1091. Admittedly, the underlying policy of the federal intercept program, as detailed *infra.*, supports the *Laub* Court's limited conclusion. *Laub* nonetheless remains factually inapposite to the present case because, here, petitioner's support obligation was initially covered by payments from state welfare funds. Simply put, unlike *Laub*,

---

1. Rule 1910.17(a) "provides, in pertinent part: (a) An order of support shall be effective from the date of the filing of the complaint unless the order specifies otherwise . . . ." *Laub*, 534 A.2d at 1091 n.1. In *Laub*, approximately six years after entry of the original support order, the trial court modified appellant's support obligation. *Id.* at 1091. Thus, pursuant to Rule 1910.17(a), the modification immediately created $11,825.00 in arrearages without any actual expenditures by Pennsylvania's state welfare agency. *Id.*

respondent is invoking the federal intercept statute to recoup expended state resources—the precise harm the intercept statute was created to alleviate, *see id.* at 1093.

Further, the majority's reliance on *Biddle* to support its overly narrow interpretation of section 664 is belied by the legislative history underlying creation of the federal intercept program. Specifically, the federal intercept program was created to alleviate "the growing problem of parents defaulting on their child support obligations with a consequent drain· on limited state welfare resources." *Presley v. Regan*, 604 F. Supp. 609, 612 (N.D.N.Y. 1985). The program accomplishes this goal by accelerating reimbursement to "state welfare agencies for monies spent to aid families who have not received support payments from a parent obligated to make such payments." *Id.* at 611. Simply put, the federal intercept program is a mechanism through which a state welfare agency can recoup support payments advanced "because [an obligor] has defaulted." *Rucker v. Secretary Treasury U.S.*, 634 F. Supp. 598, 602 (D. Colo. 1986). *See* BLACK'S LAW DICTIONARY at 417 ("default" means "the omission or failure to perform a legal . . . duty"). Thus, in the present case, the purpose of the federal intercept program is best effectuated, as evidenced by the plain language of section 664, by permitting respondent to use petitioner's federal tax refund to offset his arrearage.

The majority would nonetheless allow a delinquent party to reap a monetary windfall by merely complying with an interest-free payment plan. This holding clearly overlooks the economic realities of past-due support. A remedial court-ordered payment plan is <u>only</u> instituted where a party *defaults* on his or her support obligations. Such a default is often, as here, initially covered by the expenditure of state resources. Recognizing our state possesses finite welfare funds, sound public policy mandates that section 664 be liberally construed to accelerate discharge of arrearages thereby maximizing the utility of our limited welfare resources.

Accordingly, as the majority's interpretation of section 664(c)(1) is inconsistent with the legislative intent behind the federal intercept program, I respectfully dissent.