**DAVIS v. N.C. DEPT. OF HUMAN RESOURCES**

[349 N.C. 208 (1998)]

HAYWOOD C. DAVIS, Petitioner v. NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, DIVISION OF SOCIAL SERVICES, CHILD SUPPORT ENFORCE-MENT SECTION, Respondent

No. 314A97

(Filed 9 October 1998)

**1. Taxation § 216 (NCI4th)— child support—federal income tax refund**

The Court of Appeals correctly held that respondent improperly intercepted petitioner's 1993 federal income tax refund when petitioner made child support payments in accordance with a court order but had not fully repaid the public assistance debt that he had incurred prior to the paternity adjudication. Under the federal law, a state agency may intercept an individual's federal income tax refund when the parent owes past due child support, with "past due support" defined as a delinquency. "Delinquency" is not defined in the United States Code but the interpretation and application of the term in other jurisdictions, including *In re Biddle*, 31 B.R. 449, is that delinquency arises when the debtor falls behind in court-ordered payments. The petitioner here was not delinquent since he was current in his court-ordered repayment plan, even though he had not completely extinguished his entire child support debt.

**2. Taxation § 216 (NCI4th)— child support—interception of state income tax refund**

The Court of Appeals erred by approving respondent's interception of petitioner's state income tax refund where petitioner had paid child support according to a court order but had not fully repaid a public assistance debt incurred prior to a paternity adjudication. Under N.C.G.S. § 105A-3(b), when an alternative collection means is in progress or available, a claimant agency has an affirmative duty to seek and obtain the Attorney General's advice or opinion before undertaking a state income tax refund interception. This statutory procedure was not followed in this case.

Justice WYNN did not participate in the consideration or decision of this case.

Appeal by respondent pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 126 N.C. App. 383,

485 S.E.2d 342 (1997), affirming in part, reversing in part, and remanding an order entered by Smith (W. Osmond, III), J., on 19 March 1996, in Superior Court, Cumberland County. On 4 September 1997, this Court allowed petitioner's petition for writ of certiorari as to an additional issue. Heard in the Supreme Court 15 December 1997.

*Reid, Lewis, Deese, Nance & Person, by Renny W. Deese, for petitioner-appellant and -appellee.*

*Michael F. Easley, Attorney General, by Gerald K. Robbins, Assistant Attorney General, for respondent-appellant and -appellee.*

LAKE, Justice.

This case presents for determination the issue of whether a parent who has paid child support according to a court order, but still owes arrears, may have his federal and state income-tax refunds intercepted by a state agency. The Court of Appeals held that the petitioner's federal income-tax refund should not have been intercepted but approved respondent's interception of petitioner's state-income tax refund. For the reasons stated below, we affirm the Court of Appeals' conclusion that petitioner's federal income-tax refund should not have been intercepted, but we reverse the Court of Appeals with regard to respondent's interception of petitioner's North Carolina state income-tax refund.

The facts in this case are not in dispute. On 29 January 1987, petitioner Haywood C. Davis was adjudged to be the father of LaToyah Renee Davis, born 14 June 1984. Petitioner was ordered by the trial court to pay $100.00 per month in ongoing child support plus $10.00 per month towards the repayment of $1,391.00 in past support for the child which had been paid by respondent. Petitioner complied with this order at least through the commencement of the administrative process in May 1994. On 7 October 1993, respondent sent petitioner a "Notice of Intent to Intercept Tax Refund and Statement of Account," stating that petitioner owed respondent $507.00 in child support as of 1 July 1993. At the time petitioner received this notice of intercept, he was current in his child-support obligation as directed by the trial court, but he continued to owe past paid public assistance and non-AFDC arrearages in excess of $150.00 and $50.00 respectively. The notice further stated that petitioner's state and federal income-tax refunds would be intercepted to pay these arrearages.

On 22 May 1994 and 23 August 1994, petitioner filed petitions for a contested case hearing with the Office of Administrative Hearings, contesting the interception of his 1993 federal and state income-tax refunds because he was not delinquent in the repayment of his child-support arrearages. On 23 September 1994, the chief administrative law judge (ALJ) consolidated the petitions for a single hearing. Respondent subsequently moved for summary judgment. On 17 January 1995, the ALJ entered a recommended decision for entry of summary judgment in favor of petitioner. However, respondent, in its 28 April 1995 final decision, reversed the ALJ and granted summary judgment for respondent. Petitioner appealed to Superior Court, Cumberland County, which, in an order entered 19 March 1996, affirmed the agency's ruling authorizing the interception of petitioner's state and federal income-tax refunds. The Court of Appeals unanimously affirmed the trial court's ruling approving respondent's interception of petitioner's state income-tax refund, holding that summary judgment was proper for respondent on that issue, but in a split decision, it reversed the trial court's conclusion that petitioner's federal income-tax refund could also be intercepted and remanded for entry of summary judgment for petitioner on that issue.

[1] We first address whether the Court of Appeals correctly held that respondent improperly intercepted petitioner's 1993 federal income-tax refund when petitioner made child-support payments in accordance with a court order but had not fully repaid the past public-assistance debt that he had incurred prior to the paternity adjudication. Under United States law, a state agency may intercept an individual's federal income-tax refund when the parent owes "past-due [child] support." 42 U.S.C. § 664 (1990). The United States Code defines "past-due support" to mean, "the amount of a delinquency, determined under a court order, or an order of an administrative process established under State law, for support and maintenance of a child, or of a child and the parent with whom the child is living." 42 U.S.C. § 664(c)(1). Respondent argues that "delinquency" means any amount of child support which has been established by a court order and which has not been fully paid or reimbursed. We disagree.

Although the word "delinquency" is not defined in the applicable section of the United States Code, 42 U.S.C. § 664(c), or other related sections, a federal bankruptcy court has held that "[t]he delinquency arises when the debtor falls behind in [the] court ordered payments." *In re Biddle*, 31 B.R. 449, 452 (Bankr. N.D. Iowa 1983). The *Biddle*

court's interpretation of the word "delinquency" under the United States Code is consistent with the interpretation and application of this term in other jurisdictions. For instance, a Pennsylvania court has held that the federal interception program did not apply where the supporting parent was current with his court-ordered support payments even though the parent still owed an arrearage. *Laub v. Zaslavsky*, 369 Pa. Super. 84, 534 A.2d 1090 (1987), *aff'd per curiam*, 523 Pa. 102, 565 A.2d 158 (1989). Similarly, the Ohio Court of Appeals has held that the state agency could not intercept the obligor-father's federal income-tax refund when he was not in default of his court-ordered obligation, although he had not yet extinguished his entire debt. *Gladysz v. King*, 103 Ohio App. 3d 1, 658 N.E.2d 309, *disc. rev. denied*, 73 Ohio St. 3d 1428, 652 N.E.2d 801 (1995). According to the Ohio Court of Appeals, "a delinquency is created by a default in performance, not merely by the existence of an outstanding debt." *Id.* at 6, 658 N.E.2d at 312.

*Black's Law Dictionary* further supports petitioner's interpretation of "delinquency" and defines the word as the "failure, omission, violation of law or duty. Failure to make payment on debts when due. State or condition of one who has failed to perform his duty or obligation." *Black's Law Dictionary* 428 (6th ed. 1990). Applying this definition and these judicial interpretations, we conclude that petitioner was not "delinquent" under 42 U.S.C. § 664, since he was current in his court-ordered repayment plan at the time his 1993 federal income-tax refund was intercepted, even though he had not completely extinguished his entire child-support debt. Accordingly, we hold that a North Carolina agency, administering a plan approved under 42 U.S.C. § 664, cannot intercept a supporting parent's federal income-tax refund until the parent fails to pay currently due court-ordered support or reimbursement payments, and we affirm the Court of Appeals on this issue.

[2] We now turn to the interception of petitioner's state income-tax refund. The propriety of this means of debt collection requires our determination of whether respondent was required to obtain an opinion, or advice, from the Attorney General that the child-support repayment plan established by the district court was an inadequate means of collecting petitioner's child-support arrearage so that the interception of petitioner's state income-tax refund would be justified under chapter 105A of the General Statutes, the Setoff Debt Collection Act, and specifically subsection 105A-3(b) thereof. For the reasons stated below, we hold that N.C.G.S. § 105A-3(b) imposed an

affirmative duty on respondent to seek the advice of the Attorney General with respect to the adequacy of the existing means of collection established by the district court.

The controlling statute for interception and setoff relating to state income-tax refunds provides in pertinent part:

> (b) All claimant agencies shall submit, for collection under the procedure established by this Article, all debts which they are owed, except debts that they are advised by the Attorney General not to submit because the validity of the debt is legitimately in dispute, because an alternative means of collection is pending and believed to be adequate, or because such a collection attempt would result in a loss of federal funds.

N.C.G.S. § 105A-3(b) (1997). The meaning and intent of this statutory provision is clear. "When the language of a statute is clear and unambiguous, it must be given effect and its clear meaning may not be evaded by an administrative body or a court under the guise of construction." *State ex rel. Util. Comm'n v. Edmisten*, 291 N.C. 451, 465, 232 S.E.2d 184, 192 (1977). This statutory provision simply states that claimant agencies "*shall* submit" all debts owed "*except* debts*" involved with legal questions or matters where input from the Attorney General is needed or would be helpful in three clearly defined areas: (1) where the validity of the debt is in dispute, (2) where another means of collection is pending or available which may be adequate, or (3) where federal funding may be lost. By this language, the legislature could have intended only that in any one of these three categories, each carrying legal implications if debt setoff is used, a claimant agency is required to seek and obtain the advice or opinion of its lawyer, the Attorney General, before it proceeds with interception and setoff debt collection. The situation in the case *sub judice* clearly falls within the second of these three categories.

We therefore hold that where, as here, alternative collection means are in progress, or available, a claimant agency has an affirmative duty to seek and obtain the Attorney General's advice or opinion before undertaking state income-tax refund interceptions. Since this statutory procedure was not followed in the case *sub judice*, the decision of the Court of Appeals must be reversed in this respect.

AFFIRMED IN PART; REVERSED IN PART.

Justice WYNN did not participate in the consideration or decision of this case.