294 S.W.3d 238 (2009)
In the Interest of R.C.T., L.J.T., and C.L.T.
No. 14-07-00642-CV.
Court of Appeals of Texas, Houston (14th Dist.).
June 18, 2009.
*239 John B. Worley, Michael D. Becker, Austin, for appellant.
Steven Abramowitz, Houston, for appellee.
Panel consists of Justices ANDERSON, FROST, and HUDSON.[*]

OPINION ON REHEARING
KEM THOMPSON FROST, Justice.
The motion for rehearing filed by the Attorney General of Texas is overruled. The court's opinion issued April 7, 2009, is withdrawn, and this opinion is issued in its place.
The Attorney General appeals the trial court's order requiring it to (1) vacate and *240 remove a child support lien the Attorney General perfected under a Texas lien statute against an award of retroactive child-support; and (2) return a federal income-tax refund intercepted from the United States Department of the Treasury under 42 U.S.C. § 664(a). We hold that the retroactive support was an amount due and owing under the Texas child-support-lien statute. This retroactive support, however, was not past-due support as that term is defined under the federal income-tax-refund-intercept statute. We thus modify the trial court's judgment to delete the parts ordering the lien removed and affirm the trial court's order as modified.

I. FACTUAL AND PROCEDURAL BACKGROUND
Lynn D. Torres and appellee John A. Torres were divorced in September 2000. The trial court appointed Lynn as sole managing conservator and John as possessory conservator of their three minor children, R.C.T., L.J.T., and C.L.T. The trial court also ordered John to pay $828 per month in child support.
Almost four and a half years later, the Attorney General filed a proceeding to modify the child-support order. The Attorney General sought an upward modification of the child support and requested that the modification take effect retroactively upon the earlier of the date of service of citation on John or John's appearance in the suit to modify, as permitted by section 156.401 of the Texas Family Code.
The trial court signed an agreed order in September 2006 (hereinafter the "Order"). In the Order the court found that, as of April 2005, John should have been paying child support of $1,340 per month rather than $828 per month. The trial court also found that, as of January 2006, John should have been paying $1,380 per month. Thus, the trial court calculated the amount of back or retroactive child support to be $9,024. The agreed order provided that John could pay the retroactive amount in monthly installments of $150 until "the entire retroactive arrearage amount" is paid in full. Both Lynn and John agreed to the terms of the order. The Attorney General approved the agreed order as to form, but did not agree to the substance of the order.
The Attorney General then filed a child-support lien with the Harris County District Clerk for the amount of unpaid retroactive support. The Attorney General also notified the United States Department of the Treasury that John owed past-due support in an amount exceeding $500. The Department of Treasury then informed John that his federal income-tax refund in the amount of $3,839 would be intercepted and paid to the Attorney General as part of the debt John owed.
John filed a motion to vacate the lien. John alleged that the lien was invalid inasmuch as the parties had agreed that the retroactive child support could be paid in monthly installment payments and John was current on the installments. After a hearing, the trial court granted the motion to vacate the lien. Although the agreed order identified the $9,024 owed by John as a "retroactive arrearage amount," the trial court found that "the retroactive child support in the [agreed order] is not child support arrearages [sic]." At the hearing on the motion to vacate, the trial court reasoned that the retroactive amount could not be considered an arrearage or delinquency because John had not failed to comply with the payout schedule. The trial court further opined that allowing the Attorney General to enforce a lien on the retroactive child support would discourage parties from entering agreed orders. The trial court thus ordered the Attorney General to remove the lien and to disperse to John the $3,839 tax refund that the Department *241 of the Treasury had sent to the Attorney General. The Attorney General now challenges the trial court's order.

II. ISSUES PRESENTED
The Attorney General raises the following appellate issues:
1. Is unpaid retroactive child support an amount that is "due and owing," thus creating a child-support lien, when the obligor is current in making court-ordered monthly payments on the retroactive support?
2. Is retroactive child support "past-due support," as defined by federal law, that may be collected by offsetting a federal income-tax refund?

III. STANDARDS OF REVIEW
Our decision as to the propriety of the trial court's order turns on the meaning of state and federal statutory language. We review issues of statutory construction de novo. See Subaru of Am., Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 222 (Tex.2002); In re Smith, 260 S.W.3d 568, 572 (Tex.App.-Houston [14th Dist.] 2008, orig. proceeding). In construing a statute, our objective is to determine and give effect to the legislative intent. See Nat'l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex.2000). If possible, we must ascertain that intent from the language the legislature used in the statute and not look to extraneous matters for an intent not stated in the statute. Id. If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. St. Luke's Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex.1997); In re Smith, 260 S.W.3d at 572. We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the legislature chose. Id.

IV. ANALYSIS

A. Did the trial court err in concluding that the retroactive support was not "due and owing" under the Texas child-support lien statute?
Our resolution of the Attorney General's first issue depends on whether the retroactive child-support amount awarded in the Order is an amount "due and owing" under the Texas child-support-lien statute. John argues the retroactive amount does not give rise to a lien because he has complied fully with the court's payout schedule. Based on the express language of the statute, we conclude that the retroactive amount is an amount due and owing to Lynn, and thus results in a child-support lien, regardless of whether John is current on the court-ordered payout schedule.

1. The retroactive child support is due and owing.

Section 157.312(d) of the Texas Family Code provides as follows:
A child support lien arises by operation of law against real and personal property of an obligor for all amounts of child support due and owing, including any accrued interest, regardless of whether the amounts have been adjudicated or otherwise determined, subject to the requirements of this subchapter for perfection of the lien.
TEX. FAM. CODE ANN. § 157.312(d) (Vernon Supp. 2008) (emphasis added).
We have located no cases construing the meaning of the words "due and owing" under the provisions of this statute. In the absence of a statute or controlling case law defining the terms used in a statute, we apply the ordinary and generally accepted common meaning of the words used. See Martin v. Harris County Appraisal Dist., 44 S.W.3d 190, 194 (Tex. *242 App.-Houston [14th Dist.] 2001, pet. denied). The common meaning of the word "due" with regard to a debt is one that is "immediately enforceable" or is "owing or payable; constituting a debt." BLACK'S LAW DICTIONARY 538 (8th ed. 2004). The word "owing" is defined as "that is yet to be paid; owed; due." Id. at 1137.
The retroactive child-support amount of $9,024 awarded in the Order meets the common definition of the word "due" because it is an amount that is presently enforceable. The trial court's order expressly states that John owes Lynn $9,024 in retroactive support. This retroactive support represents the amount of child support that John should have been paying since April 2005, for the support of his children but had not paid. See MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1065 (11th ed. 2003) (defining retroactive as "extending in scope or effect to a prior time or to conditions that existed or originated in the past."). The retroactive support is an amount of money awarded to Lynn that she is currently entitled to possess.
The retroactive support also meets the common definition of the word "owing." Although John has paid some of the retroactive support pursuant to the monthly-payout schedule, it is undisputed that the balance of the retroactive amount remains unpaid. The retroactive support awarded in the Order is an amount due and owing for purposes of section 157.312(d).

2. The payout schedule in the Order does not alter the meaning of the statute.

John argues that the retroactive amount awarded in the order cannot be due and owing under section 157.312(d) because he is in compliance with the payout schedule. We disagree. The fact that the court allowed John to retire the debt by means of a payout schedule does not change the "due and owing" nature of the debt. The payout schedule is simply one way that John is allowed to satisfy his matured and enforceable debt.
In In re Dryden, the Corpus Christi Court of Appeals addressed the issue of permissible collection efforts in light of a payout schedule. 52 S.W.3d 257, 259-60 (Tex.App.-Corpus Christi 2001, orig. proceeding). The father owed child-support arrearages totaling over $90,000, and the trial court ordered the amount to be paid by monthly payments of $400. Id. at 260. It was undisputed that the father was in compliance with the repayment obligations. Id. Nevertheless, the mother initiated post-judgment discovery and obtained a writ of execution to levy on personal property owned by the father. Id. The father moved for a protective order to prevent any collection efforts so long as he was in compliance with the monthly payout schedule set forth in the original judgment. Id. at 260-61. The trial court granted the motion for protection and the mother sought a writ of mandamus. Id. at 261.
The Dryden court held that the payout schedule could not prevent execution on the judgment for arrearage. Id. at 263. The court noted that "[t]he right to collect a money judgment by execution is inherent in the judgment and does not depend on specific recitals." Id. The court further found that the trial court could not preclude the mother from collecting the judgment simply because the father was in compliance with the payout schedule. See id. The court explained that the payout schedule merely gave the mother "two permissible options for collecting the more than $90,000 that [the father] owed her for the support of their two minor daughters: (1) a $400 monthly payment toward the arrearage until it is fully paid, and (2) a *243 judgment for the entire amount, which may be collected using all available post-judgment collection methods." Id. at 264 (footnotes omitted).
We agree with the Dryden court's reasoning. The payout schedule simply gave Lynn two permissible options for collecting the retroactive child support she was entitled to receive under the Order. See id.; see also Attorney General v. Wilson, 878 S.W.2d 690, 691 (Tex.1994) (per curiam) (concluding trial court erred in issuing order prohibiting Attorney General from abstracting a judgment for retroactive child support so long as debtor timely made periodic payments). The existence of a payout schedule does not preclude Lynn (or the Attorney General) from utilizing any available collection efforts, such as a child-support lien.[1]

3. The debt does not have to be an arrearage to meet the definition of "due and owing."

The trial court ordered the Attorney General to release the lien, reasoning that the retroactive support was not an arrearage or delinquency. But section 157.312(d) does not require the debt to be an arrearage in order for a lien to arise. In fact, the lien arises by operation of law for all amounts due and owing, "regardless of whether the amounts have been adjudicated or otherwise determined." Tex. Fam.Code Ann. § 157.312(d) (Vernon Supp. 2008). There is nothing in the Texas statute requiring the debt to be an arrearage to trigger the attachment of the lien.
Our holding is supported by the legislature's 2001 amendment of section 157.312(d). At that time the legislature changed the statutory language from "overdue support" to amounts "due and owing." Compare TEX. FAM.CODE ANN. § 157.312(d) (Vernon Supp. 2008), with Act of May 15, 1997, 75th Leg., R.S., ch. 420, § 2, 1997 Tex. Gen. Laws 1660, 1660, and Act of May 21, 1997, 75th Leg., R.S., ch. 911, § 20, 1997 Tex. Gen. Laws 2864, 2868-69. With this amendment to section 157.312(d), the legislature broadened the scope of the child-support lien statute to include all amounts of child support due and owing, and not merely those amounts that are overdue. An amount of child support does not have to constitute an arrearage before the lien arises under section 157.312(d).
John cites two cases in which the Texarkana Court of Appeals held that retroactive child support is not an arrearage. See In re J.G.Z., 963 S.W.2d 144 (Tex.App.-Texarkana 1998, no pet.); see also In re House, No. 06-99-00155-CV, 2000 WL 1238845 (Tex.App.-Texarkana Sept. 1, 2000, no pet.) (not designated for publication). Those cases, however, were not decided under the Texas lien statute and do not address whether a retroactive-support award is an amount "due and owing" for purposes of section 157.312(d). The cases address whether a retroactive child-support award constitutes a money judgment for an arrearage. In re J.G.Z., 963 S.W.2d at 148; In re House, 2000 WL 1238845, at *2. Because section 157.312(d) does not require a debt to be an arrearage before a lien can arise, the Texarkana cases are inapplicable.
We hold that the trial court erred in granting John's motion to the extent that the trial court ordered the child-support lien vacated and ordered the Attorney *244 General to remove all such liens against John's property as a result of the order to pay retroactive child support. Accordingly, we sustain the Attorney General's first issue.

B. Did the trial court err in concluding that the retroactive support is not a past-due amount under the federal income-tax-refund-intercept statute?
In the second issue, the Attorney General argues that, in addition to the lien, it is entitled to intercept John's federal income-tax refund because the amount of retroactive child-support awarded meets the federal tax-refund-intercept statute's definition of past-due support. We disagree. The federal statute expressly states that it applies to a "delinquency." The language used in the federal statute is not as broad as that used in the Texas lien statute. Because the retroactive child support owed by John is not a delinquency, it does not meet the definition of past-due support.
Under federal law, a state IV-D agency may collect past-due child support through offsets of federal income-tax refunds. See Social Security Act, 42 U.S.C. § 664 (2003). Section 664(a)(2)(A) of the Social Security Act provides in pertinent part as follows:
Upon receiving notice from a State agency administering a plan approved under this part that a named individual owes past-due support (as that term is defined for purposes of this paragraph under subsection (c) of this section) which such State has agreed to collect under section 654(4)(A)(ii) of this title, and that the State agency has sent notice to such individual in accordance with paragraph (3)(A), the Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such individual (regardless of whether such individual filed a tax return as a married or unmarried individual). If the Secretary of the Treasury finds that any such amount is payable, he shall withhold from such refunds an amount equal to such past-due support, and shall concurrently send notice to such individual that the withholding has been made....
Social Security Act, 42 U.S.C. § 664(a)(2)(A) (2003). The term "past-due support" is defined as follows:
(1) Except as provided in paragraph (2), as used in this part the term "past-due support" means the amount of a delinquency, determined under a court order, or an order of an administrative process established under State law, for support and maintenance of a child, or of a child and the parent with whom the child is living.
(2) For purposes of subsection (a)(2) of this section, the term "past-due support" means only past-due support owed to or on behalf of a qualified child (or a qualified child and the parent with whom the child is living if the same support order includes support for the child and the parent).
42 U.S.C. § 664(c).[2]
In the statute, Congress does not define the term "delinquency." The Code of Federal Regulations describes "past-due support" as "the amount of support determined under a court order ... for support *245 and maintenance of a child or of a child and the parent with whom the child is living, which has not been paid." 45 C.F.R. § 301.1. The Attorney General argues that reading the statute and the federal regulation together leads to the conclusion that a state agency may intercept a federal income-tax refund to offset an amount of child support that has been determined under a court order but not yet paid. We disagree.
Although we have found no Texas cases addressing the definition of "delinquency" under section 664(c), several other states have held that there must be a failure to comply with a prior court order to permit interception of a federal income-tax refund. In Davis v. North Carolina Dep't of Human Resources, a father was ordered to pay a certain amount each month in ongoing child support plus another amount per month towards the repayment of arrearage owed for support of the child. 349 N.C. 208, 505 S.E.2d 77, 78 (1998). At the time the father received notice of the intercept of his federal income-tax refund, he was in compliance with the court-ordered support obligations. Id. The Supreme Court of North Carolina held that, under section 664(c), the state agency could not intercept the tax refund "until the parent fails to pay currently due court-ordered support or reimbursement payments..." Id. at 79. The court stated that a delinquency is "created by a default in performance, not merely by the existence of an outstanding debt." Id. at 79; accord Gladysz v. King, 103 Ohio App.3d 1, 658 N.E.2d 309, 312 (1995).
Similarly, in Laub v. Zaslavsky, a Pennsylvania intermediate appellate court addressed the definition of "delinquency" under section 664(c) in a factual context nearly identical to the one at bar. See 369 Pa.Super. 84, 534 A.2d 1090 (1987). In Laub, the non-custodial parent was ordered at the time of divorce to pay child support for the couple's two children. See id. at 1091. Four years later, the custodial parent sought and received an upward modification of the child-support obligation. Id. The modification was made retroactive, such that "arrearages in the amount of $11,825 were immediately created." Id. The parent was ordered to pay a certain amount each month towards the retroactive support in addition to current child support. Id. at 1092. The Pennsylvania court held that the retroactive support did not satisfy the definition of a "delinquency" under section 664(c) because the parent was in compliance with the court's repayment order. Id. at 1093. After examining federal authorities addressing the purpose behind the federal income-tax-intercept program, the court explained that "the federal intercept program does not encompass situations where a parent has continually complied with his child support obligation, but where, nonetheless, arrearages are created as a result of the retroactive effect of an order of support." Id.
We agree with the reasoning of the North Carolina and Pennsylvania courts and hold that under the facts of this case, the Attorney General may not use the federal intercept program unless the obligor fails to comply with the trial court's order of child support, thus creating a delinquency for purposes of the federal statute.[3]
*246 The Attorney General relies on Mushero v. Ives, 949 F.2d 513 (1st Cir.1991), as support for the claim that retroactive support may be considered a delinquency. We do not find Mushero persuasive. In that case, a father brought a class action alleging that his federal rights were violated by the state of Maine's interception of his federal income-tax refund to satisfy his indebtedness for Aid to Families with Dependent Children ("AFDC"). Maine had paid over $5,000 to the mother in AFDC aid. Id. at 514. Maine then filed a proceeding against the father to determine the father's duty to reimburse the state for the AFDC payments to the mother. Id. The father argued the state impermissibly was seeking retroactive child support not recoverable under Maine law. Id. at 517. The First Circuit Court of Appeals disagreed, holding that, under Maine law, all parents have a duty to support their children and retroactive child support was thus available. Id. at 518-19. Because the amount sought by the state as reimbursement for AFDC payments was an amount the mother would have been entitled to recover from the father, the federal court found the father's federal rights were not violated. Id. at 519. Though the result in Mushero was that a federal income-tax refund was properly withheld for repayment of an amount analogous to retroactive child support, the court did not analyze whether a retroactive child-support award satisfied the definition of "delinquency" under section 664(c).
Moreover, Mushero did not involve a situation in which the father was in compliance with a previous court order of child support that had been retroactively adjusted upward. See id. at 514. The father in Mushero had been voluntarily paying some child support, but not enough to cover his AFDC debt. Id. Arguably, then, the father had been delinquent in his common law duty to provide support for his children. See id. at 518 (stating that child support duty exists whether or not a court or administrative order exists establishing a formal obligation). Unlike the instant case, Mushero did not involve a father that was in compliance with an existing court order of support.
In the motion for rehearing, the Attorney General urges this court to adopt the broader meaning of the term "delinquency," as defined in the Sixth Edition of Black's Law Dictionary. In that edition, "delinquency" is defined as "[f]ailure, omission, violation of law or duty. State or condition of one who has failed to perform his duty or obligation." BLACK'S LAW DICTIONARY 385 (6th ed. 1990). According to the Attorney General, John violated his duty of support by not voluntarily adjusting upward the amount he was paying in support, based on the child-support guidelines found in the Texas Family Code. See, e.g., Tex. Fam.Code Ann. §§ 154.125, 154.126, 154.128, 154.129 (Vernon 2008). We disagree. Although the guidelines cited by the Attorney General provide guidance in calculating an amount that is presumptively in the best interest of the child, the guidelines do not conclusively define the parent's support obligation. The trial court may order a different amount if the evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from those guidelines. Tex. Fam.Code Ann. § 154.123(a) (Vernon 2008). Multiple factors go into the determination of whether application of the guidelines would be unjust *247 or inappropriate under the circumstances. See id. at § 154.123(b). Thus, a parent in John's position would not know how much he had a duty to pay until an amount was specified in a court order. Even applying the Attorney General's proffered definition of "delinquency," a delinquency may not be found where a parent is in compliance with a court order of support but the support obligation is retroactively adjusted upward.
The Attorney General further argues on rehearing that under Chevron deference, we are bound by the definition of past-due support found in the Code of Federal Regulations, 45 C.F.R. § 301.1, "requiring only that the support be determined under a court order or administrative order, which has not been paid."[4] The definition of past-due support in section 301.1 is not controlling.
First, section 301.1 contains a general definition of past due support and does not define the term "delinquency." It does not address a situation in which a parent has been in compliance with a child support order and is found to owe more through a retroactive upward adjustment. A parent who has not defaulted on the terms of a court order has not created a delinquency. Second, even if we were to find an intent that the definition of "past-due support" found in section 301.1 should be applied to past-due support for purposes of the income-tax-refund-intercept statute, such an interpretation would not be entitled to Chevron deference. The definition found in section 301.1 omits the term "delinquency," contrary to the unambiguous language found in 42 U.S.C. § 664(c) (defining past-due support for purposes of tax intercept statute as "the amount of a delinquency, determined under a court order...."). Courts are not required to give deference to agency interpretations that contradict what Congress has said because such interpretations are unreasonable. See Entergy Corp. v. Riverkeeper, Inc., ___ U.S. ___, 129 S.Ct. 1498, 1505 n. 4, 173 L.Ed.2d 369 (2009).
We overrule the Attorney General's second issue and hold that the trial court properly ordered the Attorney General to return John's federal income-tax refund.

V. CONCLUSION
The retroactive child support awarded to Lynn in the Order is an amount that is due and owing under section 157.312(d) of the Texas Family Code. It is, thus, properly subject to the lien perfected by the Attorney General. The retroactive support, however, does not satisfy the definition of past-due support under the federal income-tax-refund-intercept statute. Therefore, the trial court did not err in ordering the Attorney General to return the intercepted income-tax refund to John.
We modify the trial court's judgment by deleting the parts of the judgment ordering the child-support lien vacated and ordering the Attorney General to vacate and remove all liens attached against John's property as a result of the order to pay retroactive child support. As modified, the trial court's judgment is affirmed.
NOTES
[*] Senior Justice J. Harvey Hudson sitting by assignment.
[1] We note that the Texas Family Code specifically provides that "the remedies provided by this subchapter do not affect the availability of other remedies provided by law" and are in addition to any other lien provided by law. TEX. FAM. CODE ANN. § 157.312(b), (c) (Vernon Supp. 2008).
[2] Congress amended section 664(c) effective October 1, 2007. Because the amended version was made effective after the signing of the Order at issue in this case, we cite the prior version of section 664(c). Nevertheless, the amendment did not substantively change the definition of "past-due support." Compare 42 U.S.C. § 664(c)(1) (2003) with 42 U.S.C. § 664(c) (Supp. 2008).
[3] We acknowledge the Laub dissent's argument that the interception should be allowed because "[t]he primary purpose of the federal income tax refund intercept program is not to regulate or punish the parent's conduct. Rather, the objective of the program is to ensure that a child who is entitled to financial support from his parent in fact receives that support." Laub, 534 A.2d at 1095 (Johnson, J., dissenting). The statute, however, expressly provides that it applies to a "delinquency." Thus, we are constrained to hold that, where a court order of child support is in place and the parent has not failed to comply with that order, a federal income-tax refund may not be intercepted.
[4] See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (providing that, in certain circumstances, a court should not substitute its own construction of a statutory provision, but rather should defer to a regulatory agency's reasonable interpretation of a statute).